## Otterson et al., executors and garnishees, *versus* Middleton.

1. It is a general rule that a judgment or decree of a court of competent jurisdiction cannot be impeached collaterally. The sole exception to this rule is, that when such judgment or decree is given in evidence against third persons, they may aver and prove that such judgment or decree was procured by fraud or collusion between the parties to it. But this exception does not apply to parties or privies who have already been heard, or have had an opportunity to be heard, in that proceeding upon that same alleged fraud. As to them the record is conclusive in any collateral proceeding. Their remedy, if any, is to apply to the same court in which such judgment was entered to open or vacate it, or by writ of error or appeal.

2. Upon the distribution in the Orphans' Court of a decedent's estate, the question of the bona fides of an assignment of a certain legacy was litigated between the assignee and an attaching creditor of the legatee; the court decided in favor of its validity and awarded the fund to the assignee. In a subsequent proceeding in the common pleas, to wit, the trial of an issue under the attachment execution in which the garnishees, executors, admitted that the amount of said legacy still remained in their hands, the said attaching creditor offered evidence (alleged to have been discovered subsequently to the said proceeding in the Orphans' Court), to show that the said assignment of the legacy was collusive and fraudulent as between the legatee and his assignee:

*Held*, that the said attaching creditor having been heard in the Or-

[Otterson v. Middleton.]

phans' Court on the question of the good faith of the assignment, the decree of the Orphans' Court in favor of its validity was conclusive upon him in this collateral proceeding, and that the evidence offered by him to show fraud in the assignment was inadmissible.

January 9th and 10th 1883.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

. ERROR to the Court of Common Pleas, No. 4 of *Philadelphia county :* Of January Term 1882, No. 442.

Attachment execution upon a judgment obtained by George W. Middleton, against Samuel S. Norcross, issued against James Otterson, Jr., and F. Carroll Brewster, executors of the will of Edward P. Middleton, deceased, to attach in their hands as garnishees the amount of a legacy bequeathed by said Middleton to the defendant Norcross.    Plea, nulla bona.

Upon the trial, before BRIGGS, J., it was admitted that the garnishees had in their hands the sum of $2,343.50 " belonging to the owner of S. S. Norcross's interest in Edward P. Middleton's estate." This was the net amount of a legacy bequeathed by Edward P. Middleton to Samuel S. Norcross.

The plaintiff put in evidence the record of the judgment under which the attachment execution issued and rested.

The garnishees put in evidence the record of the Orphans' Court of Philadelphia county, in the matter of the adjudication of the account of said James Otterson, Jr., and F. Carroll Brewster, executors of Middleton's estate, and distribution of said estate, whereby it appeared as follows : At the audit the sole question before the court was as to who was entitled to the distributive share of Samuel S. Norcross in said legacy.    It was claimed by one John Graham, who alleged he was the bona fide purchaser thereof for value by assignment from said Norcross ;   and on the other hand, George W. Middleton, whose attachment was then pending, and two other attaching creditors, claimed that the court should direct the accountants to retain the same to await the final determination of said attachments. Counsel for Middleton and the other attaching creditors contested before the auditing judge the question of the good faith and validity of the assignment from Norcross to Graham, and testimony was taken as to the details of that transaction, the substance of which testimony is set forth in the opinion of this court.

The auditing judge found in favor of the validity of the assignment to Graham, and awarded the fund to him.    This adjudication was confirmed without exception or appeal.    . ..

The garnishees thereupon rested.

The plaintiff offered, in rebuttal, to show that the said adjudication of the Orphans' Court " was procured by fraud and

[Otterson *v.* Middleton.]

collusion." Objected to, because the effect of the offer is to contradict the finding of a court of competent jurisdiction in a suit on the same subject matter between the same parties; and the offer does not propose to prove fraud or collusion by the garnishees. Objection overruled. Exception.

The plaintiff thereupon offered to show by Joseph Carr that after the adjudication in the Orphans' Court the witness had a conversation with John Graham, in which Graham admitted that Norcross had handed back to him the money he paid Norcross for the assignment of the legacy, and that it was arranged between the parties to do so. Objected to. Objection overruled. Exception.

Carr testified, inter alia: "I knew John Graham; . . . . he told me he took Mr. Norcross to the Farmers' and Mechanics' Bank, or the Manufacturers' Bank, I forget which, and he gave him a check for $2,000 for the legacy of $2,500, and Mr. Norcross drew the check and handed him (Graham) the money. . . . . . He said he was not to pay the money to Norcross until he had received it from the executors; that Norcross was indebted and that this was done to save him."

Counsel for the garnishees presented the following points:

1. The adjudication of the Orphans' Court, until set aside by that court, is conclusive evidence that the garnishees have in their hands as executors, the amount of Norcross' legacy assigned by him, and belonging to John Graham, and under the plea of nulla bona the verdict must be for the garnishees. Refused.

2. The adjudication of the Orphans' Court cannot be attacked collaterally on the ground of fraud between Norcross and his assignee, Graham.

Answer. "This proposition as a legal abstraction is true, but in view of the evidence it is declined, because such is not the question before us."

3. The verdict should be for the garnishees. Refused.

The learned judge charged, inter alia, as follows: [The adjudication of a court of competent jurisdiction cannot be impeached collaterally except for fraud. Hence, in the first instance, the adjudication of the Orphans' Court must be regarded as verity. But the plaintiff alleges that the adjudication there was obtained by a palpable fraud perpetrated by Graham and Norcross. If you find this to be so, you are not estopped from finding for the plaintiff, because the adjudication of the Orphans' Court is in favor of Graham, for no adjudication procured by fraud can stand.] Whether such fraud was committed, you must determine from the evidence before you.

[If Carr's testimony is true, there can be no doubt that the fraud was committed, and that Graham and Norcross colluded

[Otterson *v.* Middleton.]

and combined to commit it.] If Graham told Carr what Carr
has testified to, such admission is against Graham. [I do not
see how you can find for the defendants unless you believe that
Carr has committed perjury here], for his testimony has been
given in detail of what he says Graham said to him, in such a
way, and of the conversations he alleges he had with Graham,
as to repel the theory that, after all, Carr may be mistaken, and
yet believe what he says to be true. This might be so, except
that [his testimony put him in such relation with Graham as to
make it almost impossible for him to be mistaken. There seems
to be no room for mistake. His testimony is either true or a
palpable falsehood]. Whether Carr's testimony is true or un-
true, you must determine in view of all the evidence before you.
If you find it to be untrue, there is nothing to impeach the
adjudication of the Orphans' Court, and you should find for the
defendant. If you do not believe Carr, you should so declare,
notwithstanding it might in effect stamp his testimony as per-
jurious, for [the case has taken such shape as to force us to pro-
nounce his testimony either true or false. Nor must you infer
that the adjudication of the Orphans' Court justifies you in find-
ing for the defendants because of such adjudication, if you
find it was procured by fraud. In other words, you should
base your verdict upon the testimony laid before you in this
trial, and cannot relieve yourselves of such responsibility because
the Orphans' Court has pronounced judgment upon testimony
before that court. I repeat, that if the evidence satisfies you
that Graham and Norcross colluded and conspired in the man-
ner detailed by Carr, you should find for the plaintiff]. Other-
wise you should find for the defendants.

The jury found the following verdict, October 26th 1880 :
—" Verdict for the plaintiff $2,343.50, subject to prior attach-
ments."

The defendants obtained a rule to show cause why a new
trial should not be granted, which rule was discharged March
6th 1882, and on the same day the court ordered the verdict to
be amended so as to read as follows :

" The jury finds that the garnishees, James Otterson and F.
Carroll Brewster, executors of the last will and testament of
Edwin P. Middleton, deceased, have in their hands subject to
this attachment, the sum of $2,343.50, bequeathed to the defen-
dant, Samuel S. Norcross, by the said Edwin P. Middleton."

Judgment was entered on the verdict as amended, where-
upon the garnishees took this writ of error, assigning for error
the admission of the testimony of Joseph Carr under the plain-
tiff's offer ; the answers of the court to their points ; the por-
tions of the charge above quoted within brackets; the action of

[Otterson *v*. Middleton.]

the court in amending the verdict, after the jury had been discharged ; and the entering of judgment upon the verdict.

*Henry S. Hagert* (with him *F. E. Brewster* and *Robert H. Hinckley*), for the plaintiffs in error.—The conclusiveness of the decree of the Orphans' Court, which it is here sought to impeach collaterally, has already been asserted by this court in .Otterson *v*. Gallagher, 7 Norris 358. There is no pretence that the Orphans' Court in the distribution of the decedent's estate had not jurisdiction of the question of the validity of the assignment, nor is there any pretence that the question of the bona fides of that assignment was not raised and passed upon by the Orphans' Court, nor that the plaintiff here appeared and contested the question in that court, nor that the decree of that court remains unreversed and unappealed from. Under such circumstances the plaintiff cannot in this proceeding again raise the question of fraud, in the assignment, and thereby impeach collaterally the decree of a court of competent jurisdiction upon the same subject matter between the same parties: Peterson *v*. Lothrop, 10 Cas. 228 ; Mehaffy *v*. Lytle, 1 Watts 314 ; Taylor *v*. Cornelius, 10 P. F. S. 187 ; Finney's Appeal, 3 Barr 312 ; Whitesides *v*. Whitesides, 8 Har. 474 ; Dundas's Estate, 23 P. F. S. 479 ; 1 Greenl. Ev. § 535 ; Duchess of Kingston's Case, 2 Sm. L. Cas. . The jurisdiction of the Orphans' Court on questions necessarily incident to distribution of a decedent's estate, is exclusive as well as conclusive ; the distribution is *in rem* as well as *in personam*, and binds creditors or claimants who might have appeared but who did not, as well as those who did appear—though in this case the claimant did appear and contest his claim : Lex's Appeal, 1 Out. 292 ; Hoffman *v*. Coster, 2 Whart. 472. The remedy, if plaintiff was aggrieved, was by exceptions to the adjudication, bill of review in the Orphans' Court, or appeal from its decree : Benton *v*. Bergot, 10 S. & R. 241 ; Clark *v*. Callaghan, 2 Watts 262 ; Heller *v*. Jones, 4 Binney 61 ; Act of March 29th 1832, Purd. Dig. 1103 ; 1 Phillips on Ev. 266, 321, 346. The cises cited on the other side are not in point; in none of them was the same decided question permitted to be again litigated in a collateral proceeding. If the plaintiff below were permitted to show in this proceeding that the Orphans' Court acted on false testimony what is to prevent us from subsequently, in another collateral proceeding showing that the testimony in this case was false ?

It was error in the court to amend the verdict a year after it was recorded : Walters *v*. Junkin, 16 S. & R. 415 ; Wolfran *v*. Eyster, 7 Watts 38.

*George W. Crawford* (*Dallas* with him), for the defendant in error.—It is not correct to say that the same question of

[Otterson v. Middleton.]

fraud in the assignment which we set up in this case was raised
or decid~d on the distribution in the Orphans' Court, for we
neither offered Carr's testimony on that hearing, nor did we
know of it until long afterwards.  While· the Orphans'· Court
properly inquired into the question of the validity of that as-
signment, we offered no testimony, and on the face of the writ-
ings the judge awarded the legacy to Graham.  The issue of
fraud in the concoction of that assignment raised in this· pro-
ceeding springs out of after-discovered evidence, and was not and
could not have been raised by us before the Orphans' Court.
It is well settled that actual fraud vitiates everything and that
a judgment of a competent court may be shown, in a collateral
proceeding, to have been obtained fraudulently : Riddle v.
Murphy, 7 S. & R. 230 ; Jackson v. Summerville, 1 Harris
359 ; Mitchell v. Kintzer, 5 Barr 216 ; Cochran v. Eldridge, 13
Wr. 368 ; Commonwealth v. Trout, 26 P. F. S. 384 ; Reeside
v. Reeside, 6 Phila. 507 ; Seitzinger v. Ridgway, 9 Watts 498 ;
Church v. Ruland, 14 P. F. S. 441.

Mr. Justice GREEN delivered the opinion of the court, Feb-
ruary 5th 1883.

The assignment by Samuel S. Norcross of his interest in the
ten thousand dollar legacy given by the will of Edward P.
Middleton, was executed and delivered to Graham the assignee
on April 3d 1877 ; the attachment in execution of George W.
Middleton, upon the interest of Norcross in the same legacy
was issued on April 17th 1877.  Mrs. Norcross, upon whose
death the legacy was payable, died on the evening of April 4th
1877.  The trustees who held the entire legacy of ten thousand
dollars for the use of Mrs. Norcross during her life, and of the
legatees in remainder after her death, having filed their account,
the same was called · for audit before Judge HANNA of· the
Orphans' Court, on June 6th 1877.  At the hearing, before
Judge HANNA, John Graham, the assignee of S. S. Norcross,
appeared and claimed all the interest of the latter in the fund
in the hands of the accountants by virtue of the assignment.
He had previously filed a petition in the Orphans'· Court setting
forth his interest in the fund and the method of its acquisition,
to wit, by means of the assignment from S. S. Norcross.  In
the petition he averred that he had paid $2,000 to Norcross as
the purchase money of his interest in the fund, and that thereby
he became the absolute owner of the entire interest of Nor-
cross in the legacy, and he prayed for an order awarding the
share of Norcross to him.  This petition was sworn to and sub-
scribed on May 22d 1877, and was duly filed in the Orphans'
Court.  At the hearing before the auditing · judge the attaching
creditor, George W. Middleton; also appeared and was represented

by counsel. Two other attaching creditors also appeared by counsel. The auditing judge reports that, " the sole question before the court was as to who was entitled to the distributive share of Samuel S. Norcross in the legacy which formed the corpus of the trust estate. On the one hand it was claimed by John Graham who alleged he was the bona fide purchaser for value of the interest and share ; and on the other hand it was claimed that the amount of the share of Norcross should be directed to remain in the hands of the accountant to await the final determination of certain attachments sur judgment issued by creditors of Norcross against the accountants as garnishees." The Judge then reports the facts disclosed by the testimony, and finds that Graham purchased the interest of S. S. Norcross for the sum of $2,000 by agreement in writing on April 2d 1877, giving his note for the amount payable one day after date, and that on the next day he took a regular assignment of the legacy and paid the note by giving his check for the amount of it, on which S. S. Norcross drew the money on the same day. He further reports that Norcross was indebted at the time to various persons, but that Graham was ignorant of this fact. He then mentions the several attaching creditors and gives the dates at which their respective writs were issued and concludes thus : " It clearly appeared from the evidence that Mr. Graham became and was the bona fide owner of all the interest and share of Samuel S. Norcross in the said legacy of $10,000 at the time of the death of Mrs. Norcross, and that his purchase of the same, and payment of the sum of $2,000 therefor was completed prior to the issuing of any or either of the attachments against said Norcross as defendant, and the trustees as garnishees." He then awards the share of Norcross in the legacy to Graham. The decree was made June 8th 1877 and it does not appear that it was ever excepted to or appealed from, or that any application has ever been made to the Orphans' Court to have it opened on the ground of fraud or for any other cause. It is therefore the final decree of a court of competent jurisdiction disposing of the fund in controversy in the present proceeding. Upon looking at the testimony taken before the Orphans' Court upon the claim of Graham under his assignment, it appears, that almost the whole of it, after the technical proof of execution of the assignment was given, related to the good faith of the transaction. The first testimony on this subject was brought out on the cross-examination of the subscribing witness Wilkinson. The witness was called by Graham and testified only to the execution of the instrument. He was then cross-examined by the attaching creditors as to the facts within his knowledge relating to the acquisition by Graham of the interest of Norcross in the legacy. He testified to what was said and done by

Graham and Norcross when they came to his office and told him that Graham had purchased the interest of Norcross for $2,000 and that they wanted an assignment drawn. The cross-examination was a clear and proper inquiry into the consideration and good faith of the transaction. After that two more witnesses were called—George Strong, and John Graham the claimant— and the whole of their testimony both upon examination in chief and upon cross-examination related to the manner in which the interest of Norcross was acquired by Graham, and the consideration that was paid for it. Graham, in reply to a question on cross-examination, testified that he. "got enough from the Baring Building Association to make up the money." His checkbook and bank-book were also given in evidence. All the details of the transaction were fully proved.

Now, while it is true that it does not appear that a distinct allegation was made that the transaction was a fraud, yet it is equally true that the validity of the assignment, in respect of the consideration that was paid for it, was at issue, was investigated, and was adjudged. It is also true that Middleton, the attaching creditor in the present proceeding, was a party to that issue, and was heard in regard to the very subject matter of the present inquiry, the validity of the assignment. Testimony was offered and admitted under exception, on the trial of this case, to prove, by the declarations of Graham, that he had not paid the $2,000 for the interest of Norcross in the legacy, and upon this evidence alone the determination of the issue of fraud in the transaction was rested. But on that issue, on the hearing in the Orphans' Court, testimony was taken, and ample opportunity was afforded for giving whatever additional evidence might have been offered on the same subject. It seems that no more was offered, but now certain additional testimony has been discovered which, had it been then known, might have been given in the Orphans' Court. It is a case of after-discovered evidence for which a court will, in the exercise of its sound discretion, grant a new trial in an ordinary common law action, if satisfied that the party asking it was reasonably diligent in searching for testimony before trial, and failed to discover it. But we do not understand that an issue of fraud, when once actually tried and determined, has any greater sanctity in this respect than any other issue. Undoubtedly, any court which has been induced by fraud to render a false judgment will readily entertain an application to set such judgment aside, and will gladly exercise its power, if satisfied of the truth of the allegation. But it by no means follows that some other tribunal, in a collateral proceeding in which such a judgment is offered as conclusive of the matters determined by it, will disregard the judgment, re-open the issue, and determine it as

though it had never been adjudged. If the parties are different, especially if the party seeking redress had no participation in the original trial and judgment, and if the issue of fraud was not then raised and decided, it is well settled that such original judgment may be impeached collaterally for fraud. This we understand to be the import of the rule upon this subject. It seems to be clear that when the person sought to be affected by the former judgment or decree was a party to it, and the same issue of fraud was then heard and determined, and he there participated in the trial of that issue, he is bound by that judgment or decree, and cannot impeach it afterwards in a collateral proceeding. His remedy is to apply to the court in which the judgment or decree was rendered to have it opened or vacated. The whole subject was exhaustively discussed by Mr. Justice SERGEANT in delivering the opinion of this court in the case of Hoffman *v.* Coster, 2 Whart. 453. He says on page 472, " It is contended by the plaintiff that fraud and collusion constitute an exception to the general rule, and that persons to be affected by such fraud and collusion may prove them, and thus avoid the effect of a judgment or decree, otherwise binding. Here, however, it is necessary to distinguish. The general rule is, that wherever a matter comes to be tried in a collateral way, the decree, sentence or judgment of any other court having competent jurisdiction, shall be received as conclusive evidence of the matter so determined. That is to say, when it is legally received in evidence such is its operation and effect—it is conclusive, and evidence is not admissible to contradict it." . . . " In such cases, if the proceeding were adversary in its character, it is ordinarily binding, and cannot be controverted. It is not permitted a third person to allege that the decree, sentence or judgment of a court of competent jurisdiction was obtained by imposition, fraud or forgery practiced on the court, or by mistake wrong or injustice. The merits cannot be thus overhauled and re-examined in a collateral proceeding. It is either not at all admissible in evidence as to third persons, or if admissible, is conclusive as to everything it directly decides as (to) the matter in question—though not as to inferences that might be drawn from it." . . . " The only exception to the rule which has been allowed of, when such judgment or proceeding is given in evidence against third persons, is, that they may aver and prove that such judgment or proceeding was procured or kept on foot by covin or collusion between the parties to it : and in such case, though binding between themselves, its operation as to third persons may be defeated." . . . " But the exception does not apply to parties or privies. The record is conclusive evidence against them in a collateral proceeding; and they cannot invalidate it by giving

[Otterson v. Middleton.]

evidence of fraud, but must apply to the court which pronounced the judgment to vacate it." A number of authorities in point are cited in the opinion which need not be repeated here. In 2 Whart. Law of Evidence § 798, the rule is stated in the same manner thus: "It must be remembered at the same time that when a party has the opportunity of applying to the court entering the judgment, to open it, he must do so, and cannot resort to a collateral attack. Thus in a case decided in New York in 1876, it is said by a learned judge, 'The judgment could not be impeached collaterally, nor could the same facts be retried between the same parties. The offer of the plaintiff was in effect to retry the issue. Judgments may be impeached in equity for fraud, but for no other reason. The remedy of the plaintiff was by application for a retrial in the superior court, or for other relief if the judgment had been procured by false or mistaken testimony, and other evidence had been discovered by which the truth could be established." Krekeler v. Ritter, 62 N. Y. 372–374–5.

In 1 Phill. Evid. 346 (2d edition) the subject is thus presented. "It has been before mentioned that judgments and sentences of courts of justice, or any other judicial act may be impeached by evidence of fraud or collusion. And such evidence was adjudged to be admissible on the part of the prosecution in the case of the Duchess of Kingston, who was tried for polygamy. A distinction in this respect has been made between the case of a stranger (who cannot come in and reverse the judgment and therefore of necessity he must be permitted to aver, that it was fraudulent) and the case of a party to the proceedings; the party himself cannot give evidence of fraud, but must apply to the court which pronounced the judgment, to vacate it." In the case of Heller v. Jones, 4 Binn. 61, this court held that where a judgment creditor who had bought the defendant's lands at sheriff's sale and conveyed them to A., appeared to a scire facias post ann., &c. by another judgment creditor against the same defendant, gave notice that he should insist upon fraud and combination between plaintiff and defendant as a defence to the scire facias, and in other ways took part in the cause, but did not attend at the trial nor give any evidence, and of course a verdict and judgment were entered for the plaintiff; A. knew and approved these acts and had a bond of indemnity from the judgment creditor first mentioned against all other claims to the land, it was not competent to A. and the judgment creditor or his representatives afterwards to controvert the judgment upon the ground of fraud. The same doctrine was applied in the case of Benton v. Bergot, 10 S. & R. 240, where fraud was set up against a foreign judgment in an action on it in this state. It was held that if the party had

notice and the court had jurisdiction, the foreign judgment could not be impeached for fraud, imposition, mistake or want of consideration, in the trial of the action upon the judgment in this state.

Numerous cases might readily be cited to the same effect, but it is unnecessary. They all proceed upon the same idea. If the party who alleges fraud in the original judgment or decree has already been heard or had an opportunity to be heard in that proceeding, upon that same fraud, he is concluded and cannot retry it in a collateral proceeding. The cases cited in opposition will be found on examination not to contain these elements and they are therefore inapplicable. The strongest of them is Jackson *v.* Summerville, 1 Har. 359. In that case the children of Ruth Summerville were the plaintiffs but they were not parties to the previous action of partition in which the fraud was perpetrated. Their parents were parties in that action but pending the proceeding they conveyed their interest to Jackson, by the deed which was claimed to be procured by fraud. No question was made in the action of partition as to the validity of the deed ; it was accepted and acted upon as a perfectly lawful instrument and on the faith of it the land was adjudged to Jackson. This is expressly stated in the opinion of this court as a reason why the decree in the action of partition might be collaterally impeached. On p. 368 COULTER, J., says, " But there never was a judgment or decree upon the question whether the deed from Summerville to Jackson was obtained by fraud. That decree was rendered upon the faith of the fact that the Summervilles were legally and honestly represented by Jackson." In the case of Chambers *v.* Baugh, 2 Cas. 105, referred to in the opinion of the court below, no question was raised in the Orphans' Court as to the validity of the assignment, and hence there had been no adjudication, nor even any hearing upon that subject in that court. It was strongly indicated in Commonwealth *v.* Trout, 26 P. F. S. 379, that the mere opportunity to interpose and object to the confirmation of the sale and the distribution of the proceeds, if not embraced and acted upon, would debar the parties alleging fraud therein from setting it up in another proceeding. The question of the power of courts of equity to investigate judgments and decrees obtained by fraud and to give relief in such cases is not before us as this is not such a proceeding. It is therefore unnecessary to consider the extent, or the limitations of the doctrine, or the circumstances in which the power will be exercised or withheld : Cochrane *v.* Eldridge, 13 Wr. 365, in which it was fully considered, was not a case of that kind, but was an ordinary application to open the fraudulent judgment itself, in which the court had undoubted power to investigate

[Teutonia Ins. Co. *v.* Mund, to use of Biddle.]

the fraud and administer all the relief sought. The conclusive character of decrees of the Orphans' Court upon subjects within its jurisdiction, and the exclusiveness of its jurisdiction to inquire and determine all matters relating to the distribution of the estates of deceased persons, were so fully discussed and so emphatically declared in Dundas's Estate, 23 P. F. S. 474 that no further consideration of it is demanded now. It is not at all disputed by the defendant in error in this case. Indeed in Otterson *v.* Gallagher, 7 Norris 355, the very decree of the Orphans' Court sought to be impeached in the present case, was considered by this court in an attachment proceeding instituted by another of the attaching creditors. Mr. Justice PAXSON on p. 358 said, "The parties to this contention claimed the same fund, the one by an assignment, the other by virtue of his attachment which is a species of statutory assignment. There can be no doubt of the power of the Orphans' Court to decide between these conflicting claims." We have then the case of a decree of a court of competent jurisdiction in a proper proceeding, after hearing, argument and decision, upon the same issue now raised, and between the same parties now contending, and we are clearly of opinion it is conclusive upon those parties until reversed on appeal, or opened and set aside by the court which made it upon application for that purpose. To hold otherwise would be a wide departure from long and firmly established principles, would introduce a strange confusion in the practice of the courts, and would result in a conflict of jurisdiction which might become very embarrassing in many cases. The assignments of error are all sustained.

Judgment reversed.