## J. J. WEAVER v. JOHN BRENNER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY.

Argued October 13, 1890—Decided June 5, 1891.

In ejectment by the sheriff's vendee of lands sold on a fieri facias from a judgment confessed by an attorney, with waiver of inquisition, the plaintiff's title cannot be impeached collaterally, by evidence that at the time the judgment note was given and confession entered, the defendant was a lunatic: Etter v. Curtis, 7 W. & S. 170, and Hope v. Everhart, 70 Pa. 231, distinguished; Hageman v. Salisberry, 74 Pa. 280, followed.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 9 October Term 1890, Sup. Ct.; court below, No. 251 June Term 1888, C. P.

On April 25, 1888, Jacob J. Weaver brought ejectment against John Brenner, for a parcel of land in Summerhill township, containing fifty acres, more or less. On July 1, 1889, after a trial before arbitrators and an appeal from the award, Amos Plummer, committee in lunacy of the defendant, appeared, and filed a plea of not guilty as to part of the land and a disclaimer as to another part.

At the trial, on August 26, 1889, the plaintiff showed title

to the land in dispute by a sheriff's sale thereof in two parcels, on October 15, 1887, for the aggregate sum of two hundred dollars, and sheriff's deed to the plaintiff acknowledged January 6, 1888; said sale having been made on a fieri facias issued August 4, 1887, upon a judgment in favor of the plaintiff against the defendant, entered February 23, 1887, for $395.17, including attorney's commissions; payable May 23, 1887, confessed by an attorney upon a purchase-money note with warrant of attorney, waiving inquisition and exemption. The defendant gave in evidence the record of a proceeding in lunacy against John Brenner, instituted April 15, 1889, the inquisition being filed on June 3, 1889, duly confirmed on July 1, 1889, and Amos Plummer being appointed the committee. The inquisition found that the defendant at the time thereof was insane, and had been so for ten or twelve years, without lucid intervals. Parol testimony was adduced for the defendant, and for the plaintiff in rebuttal, on the same subject. Other facts appearing are sufficiently stated in the opinion of the court.

At the close of the testimony, the court, JOHNSON, P. J., charged the jury in part as follows:

In regard to the question of fraud, unless it arises from the mere fact of insanity, we can see no evidence of any. [It is not shown in any way whatever that the land was sold for a greater (less?) price than it was worth. If it was sold at a fair price, and there is no evidence to the contrary, no evidence at all on the subject, then Mr. Weaver would have a right to his pay according to the terms of the agreement; and if, on the twenty-third of February, 1887, that judgment upon which the property was sold, was given for no more than the actual indebtedness of Mr. Brenner to the plaintiff, there could be no fraud. For every note a man gives he is liable for the full amount, no matter what land it covers. His real and personal estate is all liable for the amount of it; and if it is a judgment note, as this note was, entering it on the docket makes it a lien against any land he is the owner of, no matter how or from whom he obtains it.] [6]

The proceedings from that forward were regular, and there is no allegation of fraud at the sheriff's sale itself. A purchaser at sheriff's sale, like a purchaser at any other sale, buys

Charge of Court below.

as cheaply as he can. The sheriff's sale, then, to Mr. Weaver being regular, duly acknowledged in court, and the sheriff's deed being in the hands of the plaintiff, gives him the right to the possession of this land; and that is what this suit is brought for, the possession of the land. If, at the time this judgment note was given, this party was unfit to make a contract, to sign a note, or if he was deceived or defrauded in any way by the plaintiff, Mr. Weaver, then the note would not be good; but, we instruct you that, the party not being insane or the plaintiff not having knowledge of his insanity, and it being for a fair consideration, the judgment, execution, and sale of the land would be valid, and it would convey the whole of the land; and in that case the verdict should be for the plaintiff for the land described in the writ. If you believe there was any fraud or deception practiced upon this man, or that he was not compe-·tent, not fit to transact business, then the verdict would be for the defendant.

Certain points have been presented by the respective counsel which we shall read to you and reply to. The plaintiff's counsel asks us to instruct you:

4. That inadequacy of price will not warrant the jury in finding a verdict for the defendant generally, or for any part of the land described in the writ, unless accompanied with proof of actual fraud on the part of the plaintiff.

Answer: This point we affirm.[5]

5. That, under all the evidence in the case, the verdict of the jury must be in favor of the plaintiff for the land described in the writ; and there cannot be a verdict in favor of the plaintiff, as to one part, and a verdict in favor of the defendant, as to the other part.

Answer: We affirm this. The contract is all void or none of it void. You cannot separate it.[3]

6. The court is requested to instruct the jury that the plaintiff is entitled to the possession of the land in controversy, by virtue of the sheriff's sale and deed thereunder.

Answer: This point is affirmed.[2]

7. The court is requested to instruct the jury that in making up their verdict they must disregard the evidence as to the fact that other land was sold by the plaintiff on the writ and bought by him, than that included in the agreement between Weaver and Brenner.

Charge of Court below.

Answer: We so instruct you.

[Our affirmance of the plaintiff's sixth point makes it imperative upon the court to dispose of the question as a question of law; and we instruct you, under all the circumstances of this case, to find a verdict for the plaintiff for the land described in the writ. That question, without regard to the title, is one that affects possession. The sheriff's vendee is entitled to the possession and occupancy of the owner of the property, and we leave the legal question to be controverted in another action.] [4]

The defendant has presented certain points and asked our instruction upon them:

1. By the action of ejectment brought by Weaver against Brenner for the land embraced in the agreement of the twenty-fourth of May, 1882, to enforce payment of the purchase money due on the land, Weaver could only have recovered back that land in default of the payment of the purchase money upon it.

Answer: This is a correct statement of the law, but we do not hold it applicable to the present case. In other words, in the former action of ejectment which the plaintiff brought here, if he had recovered on that ejectment, he would only have recovered the land which he had sold; but that does not affect the question of this judgment, which is a judgment against all the land he had.

2. By the judgment note taken from Brenner on the twenty-third of February, 1887, for the balance of the purchase money on the land sold by Weaver to Brenner, Weaver not only got the power to sell out the interest of Brenner in the land purchased from Weaver, but also all Brenner's other land.

Answer: That is all the result of the note. When Brenner gave a judgment it became a judgment, not only upon the other land that Mr. Brenner was in possession of, but the land that Mr. Weaver sold to him. It embraced all his estate.

3. If the jury believe from all the evidence in the case that Jacob J. Weaver had reasonable cause to apprehend that Brenner was a lunatic, on and prior to the purchase from Weaver and at the time Weaver got Brenner to sign a judgment note containing a warrant of attorney to confess judgment, and containing a waiver of inquisition and an agreement of condemnation and sale on fieri facias, and afterwards bought in the land himself at sheriff's sale on this judgment, the proceedings were

fraudulent and void; no title passed thereby to Weaver, and the verdict should be for the plaintiff for only the land sold by Weaver to Brenner.

Answer: We deny this point, for the purposes of this case.[1]

—The jury returned a verdict for the plaintiff as directed.

A rule for a new trial having been discharged, the defendant took this appeal, assigning for error:

1. The answer to the defendant's third point.[1]

2, 3, 5. The answers to the plaintiff's points.[2] [3] [5]

4, 6. The portions of the charge embraced in [. ] [4] [6]


*Mr. Geo. M. Reade*, for the appellant.

Counsel cited: (1–4) Story's Eq. J., §§ 227, 228; Yeager v. Skinner, 1 McCar. 389; Eaton v. Eaton, 8 Vroom 108 (18 Am. Rep. 716); Molton v. Camroux, 2 Exch. 487 (4 Idem 17); Beavan v. McDonnell, 9 Exch. 309; Elliott v. Ince, 7 DeG. M. & G. 475; Matthieson v. McMahon, 38 N. J. L. 537, 543; Baxter v. Portsmouth, 2 C. & P. 178; Hope v. Everhart, 70 Pa. 231; Dexter v. Hall, 15 Wall. 9, 26; Banning v. Taylor, 24 Pa. 293; Knox v. Flack, 22 Pa. 337; Gilbert v. Hoffman, 2 W. 66; McKennan v. Pry, 6 W. 137; Hoffman v. Strohecker, 7 W. 86; Martin v. Gernandt, 19 Pa. 124; McCaskey v. Graff, 23 Pa. 321; Meachem v. Benef. Ass'n, 120 N. Y. 237; Evans v. Maury, 112 Pa. 301. (6) La Rue v. Gilkyson, 4 Pa. 376; Lancaster Co. N. Bank v. Moore, 78 Pa. 407; Moore v. Hershey, 90 Pa. 196; Wirebach v. Bank, 97 Pa. 543.


*Mr. A. V. Barker*, for the appellee.

(1) That the purchaser at sheriff's sale is always entitled to the possession as against the defendant in the execution, counsel cited: Young v. Algeo, 3 W. 225; Knox v. Herod, 2 Pa. 27; Snavely v. Wagner, 3 Pa. 275; Dunlap v. Cook, 18 Pa. 456; Wetherill v. Curry, 2 Phila. 98; Drake v. Brown, 68 Pa. 223; Ferris v. Irons, 83 Pa. 179; Yost v. Brown, 126 Pa. 92. (2) Hageman v. Salisberry, 74 Pa. 280; Kneedler's App., 92 Pa. 428.


OPINION, MR. JUSTICE McCOLLUM:

A contract was entered into on the twenty-fourth of August, 1882, between Jacob J. Weaver and John Brenner, by which

Opinion of the Court.

the former agreed to sell, and the latter to buy, twenty-four acres of land in Summerhill township, Cambria county, for the sum of $326.50, payable as follows : one hundred dollars, April 1, 1883 ; one hundred dollars, April 1, 1884 ; and the balance April 1, 1885. Brenner immediately took possession of the land, and continued in the occupancy and use of it, but neglected to pay the purchase money. On the sixteenth of November, 1886, Weaver brought an action of ejectment against him to compel its payment. The case was settled on the twenty-third of February, 1887, by the vendor conveying the land to the vendee, and taking his note at ninety days, with warrant to confess judgment for the unpaid purchase money, with costs of suit and attorney's commission. On the same day, Alfred Evans, Esq., appeared, and, in pursuance of the power conferred by the warrant, confessed judgment in the Court of Common Pleas of Cambria county at No. 29, March Term 1887, in favor of the payee, and against the maker, for the amount of the note. On this judgment an execution was issued to December Term, 1887, by virtue of which the land included in this action was sold to Weaver, who received a sheriff's deed for it. In April, 1888, he brought this suit to recover possession of the land, and he relies on the title he acquired by the sheriff's sale and conveyance to him.

In May, 1889, an inquisition was taken in pursuance of a commission issued for that purpose, finding that Brenner was then, and for the space of ten or twelve years preceding had been, a lunatic without lucid intervals. On the return of the inquisition a committee was appointed, who appeared, and disclaimed title to that portion of the land which Weaver sold to Brenner in 1882, and defended as to the residue on the ground that the judgment and all proceedings thereunder were void by reason of Brenner's insanity. Considerable testimony was taken for the purpose of establishing and answering this defence, and at its close the learned judge directed a verdict for the plaintiff on the general principle that the sheriff's deed gave him a right to the possession of the land against the party who was the defendant in the process on which it was sold. There was no evidence given or offered, to show that the land which was sold to Brenner in 1882 was worth less than the sum he agreed to pay for it, or that there was any fraud or bad

faith on tne part of the vendor in making the sale. The integrity and fairness of the settlement in consummation of which the note was given, were not questioned by the proofs or offers. The sole defence was the incapacity of Brenner, and that Weaver knew, or ought to have known of it. .

The proceedings in lunacy were instituted on the petition of Brenner's brother-in-law, and probably for the purpose of making evidence to be used on the trial of the ejectment. Brenner was apparently in accord with the petitioner, and disposed to facilitate the proceedings, in the belief that in their successful issue he might find relief from the obligation he had contracted. They were ex parte, in the sense that there was no opposition to them, and no notice to the persons who might be injuriously affected by them. The inquisition thus taken was prima-facie evidence of the incapacity of its subject during the period therein named, and the appellant's defence derives its principal support from it. The greater part of the additional testimony was from the mouths of Brenner's relatives, and their opinions respecting his mental condition were based on his actions and utterances in religious meetings. It appears that he took a lively interest, but was not very efficient, in church and Sunday-school work, and that when he was engaged in it he was excitable, and in speech and manner eccentric and incoherent. It was his conduct while so engaged which furnished the basis of all the opinions adverse to his sanity. There was scarcely a scintilla of evidence of any want of capacity in business affairs, that he wasted any portion of his property, or that he made any bad bargains.

The theory of the appellant is that if Brenner was not competent to enter into a contract, and Weaver knew, or ought to have known it, then the sale and all subsequent proceedings under it were void, and Weaver must be adjudged guilty of fraud in dealing with him, although there was no actual fraud in the transaction. In the view we take of this case, we need not consider whether the evidence was sufficient to constitute a defence in a suit upon the contract or note. The question which confronts us is whether the defence can be made in this action. It is a well-settled general rule that the parties to a judgment cannot impeach it in a collateral proceeding, for fraud perpetrated in obtaining it, or for disability existing at

Opinion of the Court.

the time of its rendition.   If they can have it reviewed on appeal, or apply to the court in which it was entered to open or vacate it, orderly procedure requires that they employ one of these remedies.   But a stranger to the judgment may assail it collaterally, if it was created or kept in force by collusion of the parties to it, for the purpose of defrauding him : 12 Am. & Eng. Encyc. Law, 147, and cases cited ; Hoffman v. Coster, 2 Wh. 453 ; Otterson v. Middleton, 102 Pa. 78.

It is true that in Etter v. Curtis, 7 W. & S. 170, it was held that in an action of debt upon a judgment confessed before a justice of the peace, the defendant may plead that he was an infant when the judgment was obtained and avail himself of it as a defence ; but this was ruled distinctly upon the ground that it was the only way in which the defence could be made. The court said : " A judgment against an infant in a court of record cannot be abated collaterally by the infant, as a judgment may by a stranger where it is collusive ; the remedy between the parties being by writ of error, and the fact of infancy being triable per pais, instead of by inspection.   No writ of error lies, however, to remove the judgment of a justice of the peace, and certiorari would correct no more than errors apparent on the face of it.   What, then, does necessity require ? The Common Pleas must either try the fact of infancy by depositions on certiorari, or allow the infant to plead it to a scire facias or an action on the judgment, else there must be a failure of justice.   We prefer the course which is less anomalous, and more consistent with the constitutional provision for trial by jury."   As there could be no review by appeal, and neither the Court of Common Pleas nor the magistrate had power to open the judgment, the defence was permitted as an exception to if not in violation of a settled rule, on the ground of necessity and to prevent a failure of justice.   But, in Henry v. Brothers, 48 Pa. 70, which was a scire facias to revive a judgment entered on a note by virtue of a warrant of attorney attached, the defendant offered the record of proceedings in lunacy to show that he was not competent to execute the note and warrant on which the judgment was entered, and the offer was rejected. In Hope v. Everhart, 70 Pa. 231, a judgment was entered on a note and warrant given by a lunatic.   The note contained a waiver of inquisition.   The land of the lunatic was sold by

Opinion of the Court.

virtue of a fieri facias issued on the judgment; and in an action
by his committee to recover the land from the purchaser at the
sheriff's sale, it was held that the waiver of inquisition was no
part of the judgment, and if the defendant therein had not
capacity to consent to it, and his want of capacity was known
to the purchaser, he acquired no title by the sale.   Mr. Justice
WILLIAMS, in delivering the opinion of the court, said: "This
case turns on the question whether the waiver of inquisition
was a part of the judgment on which the land in controversy
was sold.   If it was, then the defendant, though a lunatic, was
bound; and the plaintiffs, who are his committee, cannot ques-
tion its validity in this action;" and he then proceeded to show
that the waiver was not a part of the judgment, and, referring
to the position of the purchaser, said: "He knew, or ought to
have known, that a sale on the fieri facias without waiver of
inquisition would convey no title; and, if he knew that the
defendant was so destitute of understanding as to be incapable
of assenting to a waiver, it was his own folly to purchase on
the faith of it.   But the facts offered to be shown should be
clearly established by the evidence, before his title is declared
void.   Where all the forms of law have been observed in mak-
ing judicial sales, titles should not be set aside without clear
proof of such facts as would avoid the sale."   In the case last
cited, the principle that the defendant in a judgment may not
attack it collaterally was recognized and adhered to, but it was
decided that a waiver contained in the note was not part of
the judgment entered by the prothonotary under the act of
1806.   This case was followed by Hageman v. Salisberry, 74
Pa. 280, in which it was held that a judgment upon warrant is
the act of the court; that, if a judgment be confessed in a suit
under terms, they are part of the record of the judgment, and
qualify it; and that, if a judgment be confessed by an attorney,
neither its regularity nor his authority can be questioned in a
collateral action; and a distinction was drawn between the
power of an attorney under the warrant, and the power of the
prothonotary under the act already mentioned.

   In the present case, as in Hageman v. Salisberry, the judg-
ment was confessed by an attorney, and the waiver was a part
of it.   It follows from the principle stated, and the authorities
cited in support of it, that the committee of the lunatic cannot,

Statement of Facts.

in an action of ejectment, impeach the judgment on which the land was sold.

Judgment affirmed.