# Hess's Estate.

*Will—Widow's election—Agreement as to estate—Family settlement—Attachment execution.*

Where a widow has refused to take under a will, the executors, all the legatees, and the widow may enter into a valid agreement under which the will is to be probated, the widow is to enjoy the use of the real estate during her life, and the personalty is to remain in the hands of the executors to be invested by them, and the widow is to receive the income, and such part of the principal as her needs may from time to time require. Such an agreement is valid against any subsequent creditor of the legatee.

Where an auditor has found that under the terms of the above agreement the executors were to pay the taxes on the widow's house while she lived, and decently bury and mark her grave after she was dead, and such finding has been approved by the court below, the appellate court will not reverse the finding at the instance of a judgment creditor of a legatee whose judgment was expressly subject to such agreement, and especially where such creditor has failed to print the testimony upon which the auditor based his findings.

*Attachment execution—Parties—Res adjudicata—Legacy—Assignment of legacy—Jurisdiction—Orphans' court—Common pleas.*

A verdict and judgment against, or in favor of a garnishee in an execution attachment, is not conclusive against a person claiming adversely to the original defendant, who was not a party to and took no part in the attachment proceeding.

Where a legacy is attached by a judgment creditor of the legatee, and the executors in attachment execution proceedings answer that the legacy had been assigned to a third person, and the attaching creditor proceeds without bringing in the assignee, and secures a judgment which was made subject to a family settlement in which the legatee had participated prior to the creation of the debt, and is limited as to execution until the estate shall have been passed upon by the orphans' court, the attaching creditor cannot in subsequent proceedings in the orphans' court allege that the rights of the assignee of the legacy had been adjudicated.

Argued Dec. 7, 1904. Appeal, No. 115, Oct. T., 1904, by John A. Ozias, from decree of O. C. Northampton Co., dis-

missing exceptions to report of George R. Booth, Esq., auditor in estate of Peter Hess, deceased. Before RICE, P. J., BEA-VER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to report of George R. Booth, Esq., auditor.

The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*Harry C. Cope*, for appellant.—Where a claim against the estate of a decedent has been put in judgment in the court of common pleas, payment of the claim cannot be resisted by the executors of the decedent at the audit of their account in the orphans' court: McClain's Estate, 180 Pa. 231.

An auditor cannot inquire into the validity of a judgment regular on its face : App. of Second Nat. Bank of Titusville, 96 Pa. 460; McNaughton's Appeal, 101 Pa. 550; Meckley's Appeal, 102 Pa. 536.

A judgment in the common pleas cannot be controverted or inquired into in a collateral proceeding in the orphans' court: McClain's Estate, 180 Pa. 231; Dyott's Estate, 2 W. & S. 557; Leeds v. Bender, 6 W. & S. 315 ; App. of Second Nat. Bank of Titusville, 96 Pa. 460; Bucknor's Appeal, 18 W. N. C. 118; Otterson v. Middleton, 102 Pa. 78.

Nagle's claim is res adjudicata : Sergeant v. Ewing, 36 Pa. 156 ; Otterson v. Middleton, 102 Pa. 78; Hammett's App., 83 Pa. 392 ; Bergdoll's Est., 11 Pa. Dist. Rep. 702 ; Anderson v. Young, 21 Pa. 448 ; Myers v. Kingston Coal Co., 126 Pa. 582; Kapp v. Shields, 17 Pa. Superior Ct. 524; Second Avenue, 7 Pa. Superior Ct. 55 ; Hartman v. Inclined Plane Co., 23 Pa. Superior Ct. 360; Myers v. Boro of South Bethlehem, 149 Pa. 85; Rauwolf v. Glass, 184 Pa. 237.

*John D. Hoffman*, for appellee.

OPINION BY PORTER, J., April 14, 1905 :

Peter Hess died testate in August, 1870, leaving a widow and five sons, all of age. The fund, which was the subject of the account by the executors in the court below, consisted of

$2,000, derived from personal property, and the interest on the same as it accrued from time to time, and the sum of $2,100, the proceeds of the sale of real estate. The appellant, although he claims as an attaching creditor of Josiah K. Hess, an alleged legatee, does not print the will of Peter Hess in his paperbook. It seems to be conceded, however, that under the terms of the will the widow was to receive the income of the $2,000 derived from personal property, and hold the real estate, during the term of her natural life; and upon her death the land was to be sold and the proceeds, together with the personal estate, equally divided among the sons. It is an undisputed fact that the widow refused to take under the will, and that thereupon some sort of an agreement was entered into between the widow, all the legatees and the executors, under the provisions of which the will was to be probated, the widow was to enjoy the use of the real estate during her life, and the $2,000 in personalty was to remain in the hands of the executors and be invested by them, and the widow was to receive the income, and such part of the principal as her needs might from time to time require. This agreement was made long before Josiah K. Hess became indebted to the appellant, and that it might lawfully be made is well settled: Walworth v. Abel, 52 Pa. 370; Burkholder's Appeal, 105 Pa. 31; Wilen's Appeal, 105 Pa. 121. The widow lived until 1902, and during her long widowhood the executors had, upon her request from time to time, expended the greater part of the principal of the $2,000 for things necessary to her maintenance.

The appellant contends that the agreement between the legatees and widow did not authorize the executors to pay the taxes on her house while she lived, and to decently bury and mark her grave after she was dead. The auditor found as a fact, which finding was approved by the court below, that the agreement did authorize these expenditures. The appellant has not printed the testimony as to this agreement, and without having it before us we certainly cannot say that it did not warrant the conclusion at which the auditor arrived. The appellant attempts to excuse his failure to print this testimony upon the ground, "that said agreement was testified to in the prior trial (upon the execution attachment) and was adjudicated and became part of the verdict and judgment in that case."

Even if it be conceded that the judgment in a proceeding to which the widow was not a party could be conclusive as to the terms of her contract, the record upon which the appellant relies shows that his judgment was made expressly subject to any payments made, "under and in pursuance of any lawful agreement entered into between said Mary Hess and the legatees of Peter Hess, deceased, prior to the service of the attachment." The seventh, eighth and eleventh specifications of error are dismissed.

The important question in this case grows out of the conflict between the claim of the appellant as attaching creditor, and that of Mrs. Tillie Hess, who claims under an assignment of the interest of Josiah K. Hess in the estate, made to Samuel Nagle. Josiah K. Hess by his deed duly sealed, dated September 19, 1877 and recorded on the day following in the recorder's office of Northampton county, assigned, granted and conveyed to Samuel Nagle all his interest in the estate of Peter Hess, deceased, payable to him after the decease of the widow of said Peter Hess. The auditor found upon sufficient evidence that this assignment was made in good faith and based upon a valuable consideration, and that the rights acquired by Nagle had become vested in Tillie Hess, who appeared before the auditor and claimed the share of J. K. Hess in the fund. John A. Ozias, on January 28, 1878, issued an attachment execution upon a judgment held by him against J. K. Hess, and caused to be summoned as garnishees George K. Hess and J. K. Hess, executors of the will of Peter Hess, deceased, attaching the distributive share of said J. K. Hess in said estate. The garnishees filed answers to interrogatories, which, however, the appellant, although they were offered in evidence, has not printed. The parties seem in the court below to have conceded that the garnishees in their answers to the interrogatories stated among other things that the interest of Josiah K. Hess in the estate had been assigned to Nagle. It would thus appear that both the garnishee and the attaching creditor knew of Nagle's claim, yet neither of them ever took any steps to require or permit him to put in issue the validity of his claim upon the trial of the execution attachment; so far as the evidence discloses Nagle had no knowledge of the pendency of that proceeding. The garnishees entered the plea of nulla

bona, and as the result of the trial upon that plea a judgment was entered against J. K. Hess, the defendant, for the sum of $1,686.69 and also, " against George K. Hess and J. K. Hess, executors of Peter Hess, deceased, garnishees, for the distributive share of J. K. Hess, defendant and legatee of Peter Hess, less one fifth of any payments made by the executors out of the sum of $2,000 for the support of Mary Hess, widow of decedent Peter Hess, during her life, and for repairing the house devised to her, in her lifetime, and in pursuance of any lawful agreement entered into between the said Mary Hess, and the legatees of Peter Hess, deceased, prior to the service of the attachment, (provided, however, that the said executors be acquitted and discharged of $186.50, being the amount of indebtedness charged by the estate of Peter Hess, deceased, against said distributive share at the date of service of attachment)." The auditor found that the right of Mrs. Hess, under the assignment of Josiah K. Hess to her father Samuel Nagle, took precedence of the attachment, which finding was sustained by the court below.

The appellant contends that the judgment entered in the execution attachment is conclusive of his right to take the one fifth of the property which was bequeathed to J. K. Hess, subject to the deductions in that judgment provided for, namely, payments made to the widow under any lawful agreement and $186.50 which had been by the executors advanced to J. K. Hess prior to the service of the attachment. That this is true as between the parties to that issue, and all others who appeared and there submitted their claims for adjudication is well settled: Moore v. Spackman, 12 S. & R. 287; Otterson v. Gallagher, 88 Pa. 355; Otterson v. Middleton, 102 Pa. 78. Whether such adjudication is conclusive upon those who were not parties to and had no knowledge of it is an entirely different proposition. Whenever a judgment is relied upon as conclusive, it may be shown by evidence aliunde not inconsistent with the record that the particular point was not adjudicated: Coleman's Appeal, 62 Pa. 252; Swayne v. Lyon, 67 Pa. 436; Hartman v. Inclined Plane Co., 11 Pa. Superior Ct. 438. The record of the execution attachment shows that Nagle was not made a party to that issue. The answer of the garnishees to interrogatories was

direct notice to the plaintiff that Nagle held an assignment of the interest prior to the service of the attachment. Had the plaintiff desired to do so he might have made Nagle a party to the issue and there have afforded the latter an opportunity to be heard: Irwin v. Railroad Company, 43 Pa. 488; Jarecki Manufacturing Company v. Hart Bros., 5 Pa. Superior Ct. 422. This was not done. The trial proceeded as if Nagle had no existence, no mention being made of his claim. A careful examination of the record in that proceeding, together with the charge of the court, in connection with the evidence submitted to the auditor in the present case, can lead to but one conclusion; the only question submitted to the jury was the amount which the executors had paid to Josiah K. Hess, and which it had been agreed should be charged against his interest in the estate prior to the service of the execution attachment. The learned judge in his charge to the jury referred to the uncontradicted evidence as to the agreement between the widow and legatees, stating that that was a question to be determined by the orphans' court, and for this reason the jury was not required to find whether any agreement had been made between the widow and legatees, their finding being that the plaintiff was entitled to have and receive from the garnishees, as executors, " upon the confirmation of their final accounts as executors, by the orphans' court of Northampton county, after the death of said Mary Hess, widow of Peter Hess, deceased, the distributive share of J. K. Hess, defendant and legatee of Peter Hess, less one fifth of any payments made by the executors, of the said $2,000 for the support of the said Mary Hess during her life, and for repairing the house devised to her, in her lifetime, under and in pursuance of any lawful agreement entered into between the said Mary Hess and the legatees of Peter Hess, deceased, prior to the service of the attachment." Then follows the specific finding as to the amount, $186.50, which had been paid to J. K. Hess prior to the service of the attachment. The learned judge in his charge said to the jury: " The way we look at this case, it is not necessary for a jury to determine what the interest of defendant, Josiah K. Hess, was at the time when this attachment was served." The jury did not, therefore, pass upon the question of whether Josiah K. Hess had any

interest in this estate. Whether, at the time of the service of the attachment, he had any interest which could be bound by the writ was, by the express terms of the verdict, made subject to the determination of the orphans' court, upon the adjudication of the accounts of the executors. The form of the judgment entered upon the verdict involves no departure from the theory upon which the issue was tried. The judgment was against the defendant for the full amount of the claim, it was against the garnishees, as executors, "for the distributive share of J. K. Hess, defendant and legatee of Peter Hess," less $186.50, and the payments which might be made to the widow under any lawful agreement, etc., and in the judgment was incorporated a provision, that process for its collection should be restrained, "until after the confirmation of final accounts" of the executors, "in the orphans' court of Northampton county, after the death of Mary Hess." This judgment was entered on June 25, 1883, nineteen years before the death of Mary Hess.

The view which the learned judge of the court of common pleas took of the questions to be determined, upon the trial under the execution attachment, is fully sustained by authority. The Act of April 13, 1843, P. L. 233, section 10, which rendered liable to execution attachment legacies and any interest in the estate of any decedent, expressly provides that "the same rights in all respects which the debtor may have, and no greater in any respect whatever are hereby placed within the power of the attaching creditor;" and the plaintiff is required to tender to the garnishee, if he be an executor or administrator, a bond with sufficient security to be approved by the court, in double the amount to be received from such garnishee, "with like conditions as are prescribed in the forty-first section of the act, entitled ' An act relating to executors and administrators,' passed the twenty-fourth day of February, A. D. one thousand eight hundred and thirty-four;" which is in these words, "with condition that if any debt or demand shall afterwards be recovered against the estate of the decedent, or otherwise be duly made to appear, he will refund the ratable part of such debt or demand, and of the costs and charges attending the recovery of the same." The debts or demands which come within this condition are not merely the debts con-

tracted by the decedent in his lifetime, but include legacies, distributive shares and all valid claims upon the estate in the hands of the executors or administrators: Allwein v. Werntz, 20 W. N. C. 109. The Act of April 10, 1849, P. L. 619, section 11, authorized the issuing and service of an execution attachment at any time after the interest of any person in the estate of a decedent had accrued by reason of the death of such decedent. The effect of this was to make clear the legislative intention that the interest of any person in the estate of a decedent should be subject to attachment before the amount of such interest had been determined, but the extent of the rights acquired by the attaching creditor, and the conditions subject to which those rights are to be exercised, remain subject to the provisions of the act of 1843 above referred to. The appellant attached the uncertain interest of his debtor in an unadministered estate. The remedy was purely statutory and the rights acquired only such as the statute gave. Had the executors, upon answers to interrogatories, admitted that there were sufficient funds of the debtor in their hands to pay this claim, judgment might have been entered against them in their representative capacity for the amount of the debt: Gochenaur's Executors v. Hostetter, 18 Pa. 414.; Lorenz's Administrators v. King, 38 Pa. 93. Upon that state of facts, however, even had the executors paid the debt, the appellant would still have been liable upon his bond to be called upon to refund, if by the final decree of the orphans' court it was determined that at the time of the service of the attachment the interest of the debtor in the estate was less than the amount which had been recovered. His ultimate rights under his attachment were, as against all who were not parties to and were not heard in that proceeding, subject to the final adjudication of the orphans' court. Where the amount of the legacy or distributive share can only be determined by a settlement of the estate, the court of common pleas will not determine what goods or effects are in the hands of the executors or administrators, although it may determine how much money is due to the plaintiff from the heir or legatee, and the amount which has been paid by the executor or administrator to the legatee on account of his distributive share. "It is evident that a jury in order to find the sum due or coming to the debtor from the garnishee as execu-

tor or administrator, would be compelled to settle the administrative account itself, a thing improper, inconvenient and belonging to the orphans' court alone : " Bouslough v. Bouslough, 68 Pa. 495 ; Hammett's Appeal, 83 Pa. 392 ; Maurer v. Kerper, 102 Pa. 444 ; Reese's Appeal, 116 Pa. 272; Strong's Executor v. Bass, 35 Pa. 333. A verdict and judgment against, or in favor of a garnishee in an execution attachment, is not conclusive against a person claiming adversely to the original defendant, who was not a party to and took no part in the attachment proceeding : Breading v. Siegworth, 29 Pa. 396; Tams v. Bullitt, 35 Pa. 308 ; Noble v. Thompson Oil Company, 79 Pa. 354.

The appellant, as attaching creditor, and the appellee, who claimed under the assignment to Nagle, presented their conflicting claims to the orphans' court, and for the first time were brought face to face in a judicial tribunal. The orphans' court had jurisdiction to pass upon their rights, and we find no error in the conclusion reached.

Decree affirmed and appeal dismissed at costs of the appellant.