## Bouslough *versus* Bouslough.

68    495
193    81

68        495
27 SC  ²506

1. Bouslough in his own right and as executor, and Fleck were summoned as garnishees; both pleaded *nulla bona*; the jury were sworn as to Bouslough as executor only; judgment was entered on the verdict against him as executor. The error was formal, and the record treated as amended.

2. Under the Act of April 10th 1849 (Attachment), a jury may not be required to find what goods, &c., were in hands of garnishee.

3. The 58th section of the Act of June 13th 1836 is inapplicable to attachments upon interests in unsettled estates of decedents.

4. As a general proposition a wife, who does not stand in the relation of a creditor to her husband, cannot set aside his voluntary alienation of his personal estate.

5. He cannot avoid his own conveyance even though fraudulent as to creditors.

6. An executor may set up fraud and avoid the act of the decedent for benefit of creditors where estate is insolvent.

7. Arrears of alimony cannot be collected by the administrator of the wife; *aliter* if the husband has evaded the payment, and compelled the wife to contract debts; the administrator may recover for benefit of creditors.

8. A wife, who has commenced proceedings for maintenance, may be viewed as a *quasi* creditor as to alimony.

9. Her relation is adverse, that of a creditor in fact, and she is not to be balked of her dues by the fraud of the husband.

10. A voluntary conveyance in contemplation of future debts, is within the spirit of the statute 13 Elizabeth.

11. An assignment with intent to defeat a wife of her claim for alimony is avoided by that statute.

12. The Act of April 15th 1845 (Divorce) gave a decree the force and effect of a judgment, and provided a remedy for its collection.

13. The term "execution" in that act is not to be confined to a fieri facias.

May 10th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Blair county:* No. 71, to May Term 1868.

The proceedings in the court below were under an attachment execution issued at the suit of Ellen Bouslough against Jacob H. Bouslough, in which William Bouslough, in his own right, and as. executor of Jacob Bouslough, deceased, and Henry Fleck, were summoned as garnishees.

In October 1860 Ellen Bouslough, the wife of Jacob H. Bouslough, filed a libel for divorce and alimony, and on the 1st February 1865 obtained a decree of divorce *a mensâ et thoro* with $800 alimony to the date of the decree and further alimony of $15 per month thereafter: on the same day the attachment execution above-mentioned was issued to enforce the decree.

The writ was served only on the garnishees, who pleaded *nulla bona*.

Jacob Bouslough, the father of Jacob H. Bouslough, died in 1857, leaving a will by which he directed his whole estate to be

[Bouslough *v.* Bouslough.]

equally divided among his children, appointing his sons, William and Jacob H., his executors.

William Bouslough, in his answers to interrogatories filed, denied that he had in his hands any money or effects of Jacob H. Bouslough, and averred that Jacob had sold all his interest in his father's estate prior to February 1st 1865 to his brother Philip, of which William, as executor, had received notice; and that the estate had not been settled.

To prove this transfer the garnishee offered in evidence an article of agreement between Jacob and Philip, dated March 20th 1861, by which Jacob agreed to sell to Philip all his interest in his father's estate for $1500, payable in five years, for which sum Philip was to give his note; he also offered evidence to show that the assignment and note were found among the papers of Philip after his death in 1866.

The administrator of Philip appeared by counsel, and contested the right of the plaintiff.

The defendants' positions were :—

1. That, as the whole interest of Jacob H. Bouslough in his father's estate was personalty, it was in his power to dispose of it absolutely, as he saw proper, and any disposition he saw proper to make of it could not be contested by his wife.

2. That an attachment execution could not lawfully issue to enforce a decree in divorce for alimony, and especially this attachment could not be sustained to attach money in the hands or to come into the hands of one executor, which upon distribution, would be due to the other executor, before all the money had been received by either, and before any administration or distribution account had been settled.

The court (Taylor, P. J.) disaffirmed the positions of the defendant, charging :—

["It is contended further for the defendant in this issue, and we are asked by his counsel to instruct you in his behalf, that whether the sale to Philip was bonâ fide, as he alleges, or was colorable only, and made by Jacob H. Bouslough to cover up his property and put it, in view of the difficulties existing between him and Ellen Bouslough his wife, beyond her reach, so as to deprive her of her marital rights, and to hinder, delay, defeat and defraud her in obtaining the fruit of any apprehended judgment or decree that she might obtain against him; as the plaintiff alleges, the verdict must still be for the defendant, for the twofold reasons: First, that she did not at the time sustain such a relation to Jacob H. Bouslough or his estate, as entitles her to question or contest here the honesty or validity of the transaction in question, or avail herself, as might a creditor, of any fraud in it, if fraud existed or be shown; and secondly, that an attachment-execution did not lie and could not legally issue upon the decree

[Bouslough v. Bouslough.]

in her favor. The instruction thus asked we refuse to give you; but on the contrary rule both of these questions against the defendant and in favor of the plaintiff.]

" The cause, therefore, goes to you, gentlemen, and it is to be decided by you upon the question: Was the alleged sale to Philip Bouslough a bonâ fide transaction, as the defendant alleges, or was it, as the plaintiff alleges, colorable and fraudulent, and done by Jacob H. Bouslough with the view and purpose, known to Philip, of defrauding her."

The jury having been sworn only as to William Bouslough, executor, in May 1867, returned a verdict "for the plaintiff," upon which the court, on the 14th March 1868, entered judgment for $850 with interest from the date of the decree in divorce.

William Bouslough, as executor, removed the case to the Supreme Court, and assigned for error the part of the charge in brackets and the entering of the judgment.

*John Scott* and *Samuel Calvin*, for plaintiff in error, cited 58th section Act of June 13th 1836, Purd. 494, pl. 19; Crawford v. Barry, 1 Binn. 481; Hampton v. Matthews, 2 Harris 106; Poor v. Colburn, 7 P. F. Smith 417; Act of February 26th 1817, Purd. 349; Act of April 15th 1845, Purd. 350; 4 Penna. L. J. 381; Turnpike Co. v. Peddle, 4 Barr. 490; Act of March 29th 1832, Purd. 766; Act of April 21st 1846, Purd. 767; Acts of 1843 and 1849, Purd. 435, 436.

The Act of March 29th 1859, Purd. 405, was considered necessary to make a decree of a court of equity a lien.

Creditors only could contest the transfer: Buehler v. Gloninger, 2 Watts 226; Clark v. Clark, 6 W. & S. 85; Pringle v. Pringle, 9 P. F. Smith 285.

*S. S. Blair*, for defendant in error, cited Acts of 13th June 1836, 13th April 1843, 10th April 1849, *supra;* Act of 27th July 1842, Purd. 492; Flanagin v. Wetherill, 5 Whart. 280; Poor v. Colburn, *supra;* Gochenaur v. Hostetter, 6 Harris 416; Straley's Appeal, 7 Wright 92; Twyne's Case, 3 Rep. 80; Boils v. Boils, 1 Cold. (Tenn.) 284; Sinnickson v. Painter, 8 Casey 384; Baker v. King, 2 Grant 256; Franklin v. Rush, 1 Phila. 571; Wray v. Tammany, 1 Harris 395; Kase v. Kase, 10 Casey 128.

The opinion of the court was delivered, October 9th 1871, by

AGNEW, J.—The record shows that William Bouslough was served as garnishee in his own right, and as executor of Jacob Bouslough, and that Henry Fleck was also a garnishee. The plea of *nulla bona* was entered generally for both the garnishees, and the trial had apparently on this issue. There is seeming error

18 P. F. SMITH—32

therefore in entering a special judgment against William Bous-
lough as executor, on what appears to be a general verdict against
both the garnishees.   But in point of ·fact the jury was sworn as
to William Bouslough as executor only, the judgment was so
entered, and he as executor only has taken this writ of error.
Under these circumstances the error is only formal, and we must
treat the record as amended, as was done in Flanagin *v.* Wethe-
rill, 5 Whart. 280, rather than reverse the judgment contrary to
the merits of the case.

The jury did not find what goods or effects were in the hands
of William Bouslough, executor, according to the 58th section of
the Act of 13th June 1836.   This raises a more serious question.
The omission would be an error in ordinary cases of· foreign
attachment under the Act of 13th June 1836, and of attachment
execution under the Act of 16th June 1836 : Hampton *v.* Mat-
thews, 2 Harris 105 ; Poor *v.* Colburn, 7 P. F. Smith 415.   It
would be an error even under the Acts of 27th July 1842 and
13th April 1843, subjecting legacies, distributive shares, &c., to
attachment, as these acts were construed in Bank of Chester *v.*
Ralston, 7 Barr 482, and McCreary *v.* Topper, 10 Id. 419, hold-
ing that the attachment would not lie until the distributive share
or other interest had been ascertained by an account settled.   But
a new aspect was given to the subject when the Act of 10th April ·
1849 was passed subjecting the interest which any person has in
the real or personal estate of any decedent to attachment as soon
as the same shall have accrued by the death of the decedent ; and
when also the decisions were made in Chambers *v.* Baugh, 2 Casey
105, Sinnickson *v.* Painter, 8 Id. 384, and Lorenz's Adm'r. *v.*
King, 2 Wright 93, that the attachment is not premature though
served before the final settlement of an account, or a decree of
distribution.   The legacy share or interest in the estate being now
subject to attachment as soon as it accrues, and before it has been
ascertained by any decree in the Orphans' Court, it is impossible
for the jury to comply with the provision in the 58th section of
the Act of 13th June 1836, by finding what goods or effects were
in the hands of the garnishees at the time of the execution of the
attachment and the value thereof.   There are the demands of the
creditors of the decedent himself, which must be ascertained and
be satisfied before anything can remain for the legatees or next
of kin.   Then there are the questions of debt and advancement
between the estate and the distributee or legatee, which must be
settled before the share or legacy can be ascertained.   The attach-
ment transfers to the attaching creditor only the right of the
debtor in the estate, subject to all claims of the garnishee as the
representative of the estate in his hands : Sect. 2d, Act. 27th
July 1842, sect. 10th, Act 13th April 1843 ; and see Strong's
Ex'rs. *v.* Bass, 11 Casey 333 ; Lorenz's Adm'r. *v.* King, 2 Wright

[Bouslough *v.* Bouslough.]

97. Thus it is evident that a jury in order to find the sum due or coming to the debtor from the garnishee as executor or administrator, would be compelled to settle the administration account itself, a thing improper, inconvenient and belonging to the Orphans' Court alone. The requisition of the 58th section of the Act of 13th June 1836 is therefore inapplicable to attachments under the Acts of 1842 and 1843 upon legacies, distributive shares and other interests in the unsettled estates of decedents.

It is true as a general proposition that a wife who does not stand in the relation of a creditor to her husband, cannot set aside his voluntary alienation of his personal estate made in his lifetime: Pringle *v.* Pringle, 9 P. F. Smith 281; Clark *v.* Clark, 6 W. & S. 85. Indeed, he cannot avoid his own conveyance or gift even though fraudulent as to creditors. The same rule follows the estate into the hands of his executor or administrator, who cannot set aside the fraudulent act for the benefit of his heirs or next of kin. But when the interest in the subject changes, a different rule prevails. Therefore the executor or administrator may set up the fraud, and avoid the act of the decedent for the benefit of creditors where the estate is insolvent: Buehler *v.* Gloninger, 2 Watts 226; Stewart *v.* Kearney, 6 Watts 453. So also arrears of alimony unpaid at the death of the wife, cannot be collected by her administrators. Yet the rule changes if the husband has evaded payment and thereby compelled the wife to contract debts, and there the administrator may recover the arrears for the benefit of the creditors. So the rule that forbids the wife to avoid the voluntary assignment or gift of her husband, must change when her relation to him changes. There is no reason why a wife whose husband has deserted her, and refused to perform the duty of maintenance, or who by cruel treatment has compelled her to leave his house, and commence proceedings for divorce and maintenance, should not be viewed as a *quasi* creditor in relation to the alimony which the law awards to her. So long as she is receiving maintenance, and is under his wing as it were, she is bound by his acts as to his personal estate; but when she is compelled to become a suitor for her rights, her relation becomes adverse, and that of a creditor in fact, and she is not to be balked of her dues by his fraud. But it is argued that this cannot exist until a decree be made for the alimony. But why is her case before the decree not as much within the spirit and intent of the statute of the 13th Elizabeth, as that of a subsequent creditor who was intended to be affected by a deed made before his debt was contracted, but in view of it. It is not doubted that a voluntary conveyance made in contemplation of future debts to be contracted, and with a view to defeat them, are within the spirit of that statute though not within its letter: Thompson *v.* Dougherty, 12 S.

[Bouslough v. Bouslough.]

& R. 448; Snyder v. Christ, 3 Wright 506; Ammon's Appeal, 13 P. F. Smith 284. Indeed, her right stands on higher ground: for the duty of maintenance existed before he made his assignment. The latter was made in 1861, while the proceeding for the divorce was commenced in 1860.

We are of opinion therefore that the assignment by Jacob H. Bouslough to Philip Bouslough, of all his interest in his father's estate, made, as the jury have found, with intent to defeat the plaintiff of her claim for alimony, falls within the spirit and intent of the statute of 13th Elizabeth, and is avoided by it. That alimony in its nature falls clearly within the class of subjects provided for in the statute, may be seen by a reference to Heath v. Paige, 13 P. F. Smith 108.

The last objection to be noticed is that an attachment execution will not lie upon a decree for alimony. However difficult it might have been to support the attachment before the passage of the Act of 15th April 1845, Brightly 350, pl. 25, the difficulty does not now exist. That act gave the decree the force and effect of a judgment as a lien upon the real estate of the husband, and provided a remedy for its collection by execution; and also gave authority to the court to exact security from the husband for its payment, if the husband be possessed of sufficient estate for its payment; and the lien of the decree be inadequate as a security. Sufficient estate here means personal as well as real. If, therefore, he be the owner of bonds, mortgages, stocks, and other choses in action, he can be compelled to give security. But if he have alienated them with intent to defraud the plaintiff, why shall she not have the proper process to reach and secure them? The attachment execution is an execution, and has been always so classed since the Act of 1836, relating to executions; which gave it as a remedy to reach those rights of property which could not be reached by a fi. fa. There is no reason, therefore, that the term execution as used in the Act of 1845 should be confined to a fi. fa. On the contrary the Act being remedial and intended to secure to the wife the collection of her alimony, and the attachment execution being most appropriate to this end, on every proper rule of interpretation we must hold that the general term " execution " in the Act includes an attachment execution. Upon the whole, finding no error in the record,

The judgment is affirmed.