# Lynn, Appellant, *v.* Lynn (No. 3).

*Divorce a mensa et thoro—Alimony — Security — Act of April 15, 1845, P. L. 455.*

Under the Act of April 15, 1845, P. L. 455, a decree for alimony creates a lien upon the real estate of the respondent, and if the court is of opinion that such lien is not sufficient security for payment of the alimony, additional security may be required. Where, upon ordering payment of alimony, the court below refused to require additional security from a respondent, who owned valuable interests in real estate, it is to be assumed that the court was satisfied that the lien given by the act was sufficient. The Superior Court will not interfere with the performance of the judicial duty in the court below, in the absence of evidence that it abused its discretion.

Argued December 14, 1920. Appeal, No. 357, Oct. T., 1920, by libellant, from order of C. P. No. 5, Phila. Co., June T., 1916, No. 17, discharging rule for security for payment of alimony in the case of Alberta H. Lynn v. Jacob H. Lynn. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Rule for security for payment of alimony. Before MARTIN, J.

The facts are stated in the opinion of the Superior Court.

The court made an order discharging the rule. Libellant appealed.

*Error assigned* was the order of the court.

*Thomas F. Gain* and *Francis Shunk Brown,* for appellant.

No printed brief was filed for the appellee.

OPINION BY LINN, J., April 25, 1921:

Libellant appeals, complaining that (1) the alimony awarded at the rate of $6,000 per year is insufficient; (2) the court erred in discharging her rule upon him to show cause why he should not enter security for the payment of alimony specified in the decree.

(1) For the reasons stated in our opinion filed this day (No. 301, October Term, 1920, on the main appeal) we must overrule the assignment of error complaining that the amount is inadequate.

(2) The Act of April 15, 1845, P. L. 455, provides: "That upon [when?] a decree a mensa et thoro, and the allowance of alimony, shall have been made......or hereafter may be made, it shall be the duty of the prothonotary......to enter the said decree on the judgment docket......which said decree when so entered, is hereby declared to be and shall remain a lien on the real estate of such respondent, until the same is satisfied for the full amount that may be due up to the period of such satisfaction; and after such lien shall be so entered, it shall be the duty of the prothonotary of said court, upon affidavit by the libellant that any payment under said decree, as the same has been made due and payable by the court, is due and unpaid, to issue execution on the written order of the libellant or her attorney, setting forth the amount so due and unpaid, which shall be directed to and served by the sheriff in like manner as executions upon judgment; and if the "court shall be of opinion that the said lien is not sufficient for the full or permanent security for payment of said decree, it shall have power and authority, on satisfactory proof being made that the respondent is possessed of sufficient estate, to order a decree and require that security, such as shall be determined and approved by said court, shall be given for the due payment of the said alimony according to the terms of said decree; the said security to be either by a bond, with sufficient securities, or mortgage on real estate, taken in the name of the Commonwealth, to the

use of the party entitled to said alimony, or by the deposit of money, to be invested as the court may deem proper, as may seem to the court sufficient to secure the payment of said alimony, as the same may fall due."

This phase of the controversy arose on a rule taken before the final decree in divorce was signed but after the record was ready for the entry of that decree. The petition averred that he was disposing of his property to disable himself from obeying any order the court might make. Libellant testified that she met respondent in Philadelphia late in 1919 and in substance that he asked her why she hadn't given consideration to offers of settlement made to her counsel, and that she replied that his proposal was not satisfactory to which he replied that "I [respondent] will sell my stuff and get out of the country,—quit the country." In respondent's answer to the petition he denied having seen her since December, 1917, but he declined to testify and no proceedings were taken to compel him to do so. His counsel called a number of witnesses from Uniontown to testify that he was in Uniontown every day during the period in which her alleged interview with him in Philadelphia must have taken place.

This Act of 1845 was considered shortly after its passage by President Judge KING in Melizet v. Melizet, 1 Par. 78, and 3 Clark, 45, in the course of which he said: "That question is, 'whether the lien consequent on a decree for alimony, is a charge on the land of the respondent for the full compliance with the decree until the same is vacated or satisfied; or whether it operates only to bind his land, on his making default in the stated payments ordered, and then only to the amount for which he is in arrear?' And our opinion is that the lien had the former effect, and renders the land chargeable with the payment of the alimony allowed, as it accrues from time to time; and that it passes to a purchaser from the respondent encumbered with such charge": See also Bouslough v. Bouslough, 68 Pa. 495, 500.

444, (1921).]            Opinion of the Court.

The record showed that the respondent was the owner of valuable interests in real estate in the western part of the state upon which the decree may operate. As the statute provided that "if the court should be of opinion that the said lien is not sufficient for the full or permanent security for the payment of said decree, it shall have power and authority on satisfactory proof being made......to order security," and as the court refused so to order, we must conclude that the court was of opinion that the lien was sufficient in the circumstances of this case. We cannot interfere with the performance of a judicial duty so vested by the statute in the court below in the absence of anything showing abuse of discretion. Nothing in this record has been called to our attention which would justify such a conclusion. The assignment of error is overruled, the costs of this appeal to be paid by appellee.