195

## Fritsch v. Buckman et al.

*Saul, Ewing, Remick & Saul,* for plaintiff.
*Barnes, Biddle & Myers,* for garnishee.

LEWIS, J., December 27, 1933.—This matter is before us on a rule for judgment against the garnishee in an attachment proceeding instituted under the provisions of the Act of April 13, 1843, P. L. 233, sec. 10, making interests in estates of decedents subject to attachment execution at the instance of judgment creditors.

The plaintiff's judgment against the defendant, William Buckman, when interest is added, exceeds $40,000. The attachment summoned as garnishee Girard Trust Company, administrator c. t. a. of the estate of Charles Buckman, deceased, and was served upon the garnishee before there had been an adjudication of its account by the Orphans' Court of Philadelphia County, and hence before any award had been made or schedule of distribution had been approved. Interrogatories were later served upon the garnishee, and its original and supplemental answers disclosed that since the service of the attachment execution cash and securities comprising a one-seventh interest in the estate had been awarded by the Orphans' Court of Philadelphia County to defendant Buckman, subject to this attachment.

The garnishee contests the validity of the attachment insofar as it is attempted thereby to seize anything other than moneys in the garnishee's hands. The contention of the trust company as ancillary administrator c. t. a. is that the Act of April 13, 1843, P. L. 233, sec. 10, authorizes attachment execution against only such property rights in decedents' estates as may be reached under the prior Act of July 27, 1842, P. L. 436, sec. 1, authorizing the seizure by foreign attachment of interests in decedents' estates, and that this latter

act contains language which indicates a. legislative intention that certificates of corporate stock, evidences of debt, such as negotiable bonds and mortgages, undivided interests in mortgages, etc., may not be seized by attachment levied against those who have the custody of the mere indicia of ownership, but must be reached by attachment directly against the corporation issuing the stock or the debtors obligated on the bonds and mortgages. An analogy is drawn between the proceedings herein and the attachment of corporate stock in an ordinary attachment execution, under the provisions of the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, sec. 13, and the earlier acts relating to the attachment of corporate stock, approved respectively March 29, 1819, P. L. 226, 7 Sm. L. 217, secs. 2 and 3, and June 16, 1836, P. L. 755, secs. 22 and 32-38.

An examination of the decisions of our appellate courts that are relevant to the questions herein raised reveals some confusion of precedents.

While in our judgment it was not all necessary, we have considered legislation and decided cases relating to (1) attachment executions or domestic attachments under the Act of June 16, 1836, P. L. 755; (2) foreign attachments under the Act of June 13, 1836, P. L. 568, as amended by the Act of March 30, 1905, P. L. 76, and finally by the Act of June 21, 1911, P. L. 1097; (3) foreign attachments of interests in decedents' estates under the Act of July 27, 1842, P. L. 436; and (4) domestic attachments or attachment executions of interests in decedents' estates under the Act of April 13, 1843, P. L. 233, as amended by the Act of April 10, 1849, P. L. 619.

Our inquiry has been to determine to what extent the practice and procedure regulating writs issued under the attachment execution Act of 1836 must be followed with relation to writs issued under the Act of 1843.

It will be found that what is referred to as the Act of April 13, 1843, P. L. 233, is but one section (section 10) of an act of the legislature entitled "An act to convey certain real estate, and for other purposes"; in other words, a single paragraph inserted as an additional section in the kind of general statute which was possible of enactment prior to the existing constitutional inhibition, and in the entire act there is no indication that this section 10 was intended as an amendment to or a supplement of the Act of 1836, unless it be contained in the words that may be characterized as the "in the same manner" clause.

Also, on examining the bound volume of the laws enacted at the session of 1849, we find that the amending statute referred to as the Act of April 10, 1849, P. L. 619, is but another single section interpolated in an act relating to various and sundry matters unconnected with attachments, and here again there is disclosed no legislative purpose to have the section operate as part of the attachment execution Act of 1836. So it may be said that both of these enactments providing for domestic attachment of interests in decedents' estates came into being as laws entirely independent of the attachment execution Act of 1836, this last statute being referred to somewhat vaguely in the words "shall be subject to be attached and levied upon . . . in the same manner as debts due are made subject to execution by the twenty-second section" of the Act of 1836. Upon examining section 22 with relation to its provisions as to execution upon debts due, we find that such obligations are merely declared to be liable to execution "like other goods or chattels subject nevertheless, to all lawful claims thereupon, of such body corporate, or person."

From this we may conclude that the intention of the composite legislative mind was that the words "in the same manner as," et cetera, should be construed as making attachments of interests in decedents' estates subject to all lawful claims thereupon—i. e., upon the share or interest attached—of executors,

administrators, trustees, or persons acquiring rights by assignment, prior attachment, or other earlier liens.

It will be noted that, at the time this attachment became effective, the property seized thereby was an undivided interest in a decedent's estate in process of administration, which we may compare to the undivided interest of a partner in partnership property. Between the time of the service of the attachment and the filing of answers to the interrogatories, proceedings were had in the orphans' court whereby defendant Buckman's hitherto undivided interest in the estate ripened into an award and hence into the right to receive certain specific items of property, including cash, shares of corporate stock, negotiable bonds, mortgage bonds or bonds secured by mortgage of real estate, etc.

It has seemed to us that this attachment under the Act of 1843 was perfectly valid as a sequestration of whatever property the judgment debtor had a right to receive from the estate, particularly in view of the language of the act giving the right to such attachments, and of the amendment of 1849. The Act of 1843, sec. 10, reads:

"All legacies given and lands devised to any person or persons, and any interest which any person or persons may have in real or personal estate of any decedent, by will or otherwise, which are subject to foreign attachment by the act of the twenty-seventh of July, one thousand eight hundred and forty-two, entitled 'An Act to enable creditors to attach legacies and property in the hands of executors and administrators, and for other purposes,' shall be subject to be attached and levied upon in satisfaction of any judgment in the same manner as debts due are made subject to execution by the twenty-second section of the act of sixteenth June, eighteen hundred and thirty-six, entitled 'An Act relating to executions:' *Provided*, That the plaintiff in said judgment shall tender to the garnishee or garnishees, if he or they be executors or administrators, a bond with sufficient security, as is provided by the second section of said act of twenty-seventh of July, eighteen hundred and forty-two; and the same rights in all respects which the debtor may have, and no greater in any respect whatever are hereby placed within the power of the attaching creditor."

The amendment reads that the above-quoted act "shall be deemed to authorize the issuing and service of process in the nature of attachment, at any time after the interest which any person or persons may have in the real or personal estate of any decedent, shall have accrued by reason of the death of such decedent: *Provided*, That a sale of the aforesaid interest of the defendant in the proceeding by attachment, authorized by the aforesaid tenth section of [the act of] thirteenth of April, Anno Domini eighteen hundred and forty-three, shall not be compelled by any process of execution, until a year shall have elapsed from the time when the interest aforesaid vested in the defendant, unless the executors or administrators of the decedent shall have sooner filed their account: in all cases when executors, administrators or trustees of the estate of decedents, shall have been made garnishees in the process in the nature of attachment, authorized by the tenth section of the act of thirteenth of April, Anno Domini eighteen hundred and forty-three, entitled 'An Act to convey certain real estate, and for other purposes,' they shall be entitled to their costs, as well as the expenses necessarily incurred by them in attending to the proceeding in which they have been made garnishees": Act of April 10, 1849, P. L. 619, sec. 11.

The Act of July 27, 1842, P. L. 436, rendering interests in decedents' estates subject to foreign attachment, reads as follows:

"All legacies given and lands devised to any person or persons by will or testament, and any interest which any person or persons may have in the real

or personal estate of any decedent, whether by will or otherwise or so much thereof as may be necessary to satisfy the demand and costs of claimant, shall be subject and liable to be attached by any creditor or creditors of such person or persons, by writ or writs of foreign attachment, in the hands or possession of the executor or administrator, or in whose hands or possession soever, the same may be as fully and effectually as in other cases, and the like proceedings shall be had as are prescribed in the several acts of this Commonwealth, regulating the proceedings in actions of foreign attachment: *Provided*, That the provisions of this act shall not extend to legacies and distributive shares due married women."

It will be noted that section 10 of the original Act of 1843, above quoted, concludes with the explanatory language: "And the same rights in all respects which the debtor may have, and no greater in any respect whatever are hereby placed within the power of the attaching creditor", which, taken in connection with the broad wording of the Act of 1842, "and any interest which any person or persons may have in the real or personal estate of any decedent, whether by will or otherwise", surely can be considered to mean that every conceivable property right which the debtor has is made subject to the attachment. Ignoring for the moment the fact that this attachment became effective while the interest seized was yet an undivided share, and hence when the judgment debtor had no claim upon any specific items of securities or other property, the "rights" which the award of the orphans' court later vested in the defendant debtor included the right, subject to the attachment, to receive from the administrator c. t. a., (1) by assignment and delivery, all certificates of corporate stock, indentures of mortgage, etc.; (2) by endorsement and delivery, all promissory notes; and (3) by delivery only, all bearer bonds. This would accord with the custom, now long prevailing among bankers, stockbrokers, and others engaged in financial and commercial pursuits, of consummating sales of corporate stock by assignment and delivery only, without requiring actual recording on the books of the corporation itself; and the like general custom among the same persons of consummating sales of promissory notes by mere endorsement on the instruments themselves without notice to the payor, of bonds and warrants secured by mortgages by assignment of such mortgages publicly recorded, and of corporate bearer coupon bonds by mere delivery from hand to hand.

We discover no reason why an attachment process should not operate with equal facility and freedom from unnecessary red tape. Therefore, even if we consider the writ herein as an attachment of corporate stock, bonds, et cetera, rather than of an "undivided share" of an estate, there appears to be no basis whatever for withholding from the attaching creditor the right and opportunity to obtain the benefit of his debtor's assets in the form of corporate stocks, bearer coupon bonds, promissory notes, etc., by direct seizure in the hands of one who has possession of these stock certificates, bonds, and notes.

This position seems to be supported by the decision of the Superior Court in Wright v. Wright, 66 Pa. Superior Ct. 269. Here the opinion was written by Judge Trexler, now President Judge, and the decision upheld a writ of foreign attachment directed against 10 shares of capital stock of Pennsylvania Railroad Company issued in the name of a nonresident defendant and assigned by him to a bank as collateral security for a loan, the bank being summoned as garnishee. There is no mention in the Superior Court's opinion of a service of the attachment upon Pennsylvania Railroad Company, which issued the stock certificates, nor any suggestion that such a method of procedure was to be deemed necessary. The court held that the proceedings had been properly instituted under the foreign attachment Act of June 13, 1836, P. L. 568.

In 1915, 2 years prior to the decision in Wright v. Wright, the Superior Court had held in Willoughby v. Barrett, 60 Pa. Superior Ct. 242, that shares of stock of a corporation cannot be seized by a creditor of the owner of the stock in foreign attachment proceedings directed against the corporation, but the Willoughby case did not decide that corporate stock could not be seized in a foreign attachment directed against one who had custody of the stock certificates. In the Willoughby case also, the opinion was written by the now President Judge Trexler, who stated:

"In the absence of express statutory provision stock owned by an individual in a corporation cannot be reached by garnishment proceedings against such corporation: 20 Cyc. 990. A number of authorities are cited in support of this statement in the footnotes and the principle seems to be supported generally by text-book writers that the process of garnishment is proper only where a debt is due from a third person to the defendant debtor. It is not a proper remedy for reaching shares of stock owned by the debtor. The corporation owes the stockholder no debt, and by no fiction of law can it be held to be a debtor of the defendant debtor: 2 Cook on Corporations, Section 491.

"Shares of stock are not representations of money, nor are they evidences of debt. The mere ownership of shares therefore does not constitute the owner a creditor of the corporation issuing them; nor from the fact that a corporation has in its possession the corporate stock book can it be inferred that the corporation has in its possession property belonging to its members. The stock book constitutes the legal evidence of the legal title to stock it is true, but the property is deemed to be in the possession of the stockholder and the corporation has no dominion thereover except in so far as such dominion may be for its own protection. It follows, therefore, that where a stockholder is indebted to a third party such third party cannot subject the shares of such debtor to satisfaction of his claim by service of garnishment process on the corporation: Hellwell on Stockholders, p. 760. Other authorities to the same effect are Clark & M., Private Corporations, p. 1149; 2 Wade, Attachment & Garnishment, Section 408; Shinn, Attachment & Garnishment, Section 498.

"Our inquiry therefore must be whether there is any legislative authority in Pennsylvania that authorizes the binding by a writ of foreign attachment the interest of a debtor in the shares of stock of a corporation. The Act of June 13, 1836, P. L. 568 (580), Section 43, relating to the commencement of personal actions by foreign attachment provides that the sheriff 'shall attach (the defendant) by all and singular the goods and chattels, lands and tenements, in whose hands or possession soever the same may be.' Section 44 provides that such writ may issue 'against the real or personal estate of any person not residing within the Commonwealth and not being within the county where such writ shall issue, at the time of the issuing thereof.' Section 45 provides that 'in every writ of attachment as aforesaid shall be contained a clause, commanding the officers to summon all persons in whose hands or possession the said goods and chattels, or any of them, may be attached, so that they and every one of them be and appear before the said courts, at the day and place mentioned in the said writ, to answer what shall be objected against them, and abide the judgment of the court therein.' Section 48 provides that the officer 'shall go to the person in whose hands or possession the defendant's goods or effects are supposed to be.'

"By the Act of July 27, 1842, P. L. 436, it is provided that all legacies given shall be subject to attachment by any creditor of the legatee by writ of foreign attachment in the hands of the executor or administrator, 'or in whose hands or possession the same may be,' as full and effectually as in other cases.

"We find nothing in either of the above acts which would make bank stock in the hands of the bank subject to foreign attachment. The bank has not in its possession goods or chattels belonging to the defendant. There is abundant authority for this view in the decisions of the courts of other states although the matter has not been decided by any of our appellate courts. In the Am. & Eng. Ency. of Law under the title of Garnishment, Vol. XIV, p. 796 (2d Ed.), we find, the question has arisen whether a corporation can be charged as garnishee at the suit of creditors of a stockholder, on account of the ownership by the latter of stock in the corporation, and it is held by the weight of authority, under the statutes providing for a summons of garnishment to be issued to persons 'indebted' to the defendant or having 'property or effects' of the latter, that stock in a corporation cannot be reached by garnishment served upon the corporation as in such a case the corporation cannot be said to be indebted to the stockholder, nor can it be said to have property or effects of the stockholder.

"The statutes of many of the states contain words of like meaning as those found in our act, and the cases almost uniformly hold that the relation of a corporation to its stockholders does not put the corporation in the position of having in its possession the property or effects belonging to the stockholder. Among many of the cases which may be cited in support of this position are Pease v. Chicago Crayon Co., 235 Ill. 391; Ross v. Ross, 25 Ga. 297; Evans v. Monot, 57 North Carolina 227; Foster v. Potter, 37 Missouri 525. All of these cases and a number more, which we need not cite, are to the effect that statutes which make property or effects of the debtor the subject of attachment in the hands of a third person as garnishee, do not cover the attaching of the stock of a corporation by making the corporation which issued such stock garnishee in the suit."

Since Wright v. Wright sustained the seizure of corporate stock of a domestic corporation through foreign attachment directed against a garnishee who held the certificate by assignment, we might assume that an attachment under the Act of April 13, 1843, P. L. 233, sec. 10, of an interest in a decedent's estate may likewise include such domestic corporate stock, especially as the Act of 1843 provides that any interest which is the subject of foreign attachment under the Act of July 27, 1842, shall be subject to seizure in a domestic attachment of an interest in a decedent's estate. The mode of seizure, it is true, is "in the same manner as debts due are made subject to execution by the twenty-second section of the act of sixteenth June, eighteen hundred and thirty-six, entitled 'An Act relating to executions' ", as hereinbefore discussed.

This may be considered an unfortunate as well as an unnecessary reference to section 22 of the Act of 1836, for it has led some of our courts to read into the Act of 1843 several other sections of the 1836 act—the thirty-fifth, thirty-sixth, thirty-seventh and thirty-eighth. These additional sections are those requiring the service of attachments on debtors and obligors and upon the corporations that issued the stock certificates sought to be attached. There is no such requirement in the Foreign Attachment Act of June 21, 1911, P. L. 1097, which subjects the real and personal estate of nonresident persons or corporations to seizure, nor is there any similar requirement in any of the other statutes creating a right of attachment. Hence we must look deeply to ascertain if there is any justification for the incorporation by judicial interpretation of sections other than the twenty-second section of the 1836 act in the Act of 1843, authorizing attachment of shares in decendents' estates.

The much discussed section 22 reads:

"The stock owned by any defendant in any body corporate, also, deposits of money in any bank, or with any person or body, corporate or politic, belonging to him, and debts due to him, shall be liable to execution, like other goods or

chattels subject nevertheless, to all lawful claims thereupon, of such body corporate, or person."

The only words of this section that answer to the above, "in the same manner as debts due are made subject to execution", are contained in the phrase "and debts due to him, shall be liable to execution, like other goods or chattels subject nevertheless, to all lawful claims thereupon", etc.

As we have heretofore said, it may reasonably be concluded that the only purpose the legislature had in referring at all to the twenty-second section of the Act of 1836 was to include in the new law authorizing attachment executions against shares in decedents' estates the "subject" clause appearing above in the twenty-second section, viz: "subject nevertheless, to all lawful claims thereupon" (the share attached) of the garnishee or other persons.

If the legislature had the further purpose of incorporating in the 1843 act all the detailed requirements of the Act of 1836 with relation to naming and serving debtors, stock-issuing corporations, etc., it would have been a very simple matter to have done so in appropriate and clear language.

In Adkins v. Poth et al., 286 Pa. 555, it was held that an attachment of apparently domestic corporate stock in the hands of trustees, under a deed of trust of which the judgment debtor was the beneficiary, was invalid, because of failure to summon the issuing corporation as garnishee. The court, through the present Chief Justice Frazer, stated:

"There is nevertheless a further difficulty in the way of permitting either of the attachments to cover the stock. Sections 22, 36 and 37 of the Act of June 16, 1836, P. L. 755, contemplated service of the corporation as garnishee when stock is seized under a writ of attachment. Inasmuch as the corporation has not been summoned, necessary parties are not before the court. Appellants seek to avoid this difficulty by pointing to the fact that their attachment was not against the stock, but against the interest of the debtor in the stock under the trust deed, and in support of this view refer to Moys v. Union Trust Co., 276 Pa. 58."

As this ruling was subsequent in time to the apparently conflicting decision in Willoughby v. Barrett, supra, it would seem to be conclusive as an interpretation of the various sections of the Act of 1836 relating to ordinary attachment executions, but we do not feel it must be accepted as adjudging that attachment of an interest in a decedent's estate must follow the same procedure merely because of the confusing reference in the Act of 1843 to section 22 of the Act of 1836.

There are other decisions which perhaps we should mention; for example, the leading case of Christmas v. Biddle, 13 Pa. 223, in which it was held that stock in a Mississippi bank, the certificate for which was sent to Philadelphia for sale by a broker, was not subject to foreign attachment issued in Pennsylvania on a judgment against another Mississippi bank which had forwarded the stock. Our Supreme Court there held that the attachment process is a proceeding in rem, and the matter and thing attached must be in the power and jurisdiction of the court; that since the stock was held and transferrable according to the laws of the State of Mississippi, where the corporation was created, the Pennsylvania courts would be without power to enforce their process.

This decision is far from satisfactory, considering the modern practice in Pennsylvania of consummating both public and private sales of stock of foreign as well as domestic corporations by assignment and delivery of certificates only as above stated. The analogy drawn between a certificate of corporate stock and a deed for land in Mississippi may have been excusable in 1850, when the corporate entity was of comparatively young growth.

A strong though indirect support of our view is found in First National Bank of Woodstown v. Trainer, 209 Pa. 387, in which an attachment execution issued under the Act of April 13, 1843, P. L. 233 (relating to attachments of legacies, etc.), seizing 10 shares of stock in the hands of the executor, who was summoned as garnishee. The issuing corporation was not joined, and yet the attachment was enforced.

Mr. Justice Dean referred to section 22 of the Act of 1836, quoting it, and then cited the thirty-second, thirty-third and thirty-fourth sections of the same act as requiring the filing of an affidavit and bond before a writ of attachment should issue for the seizure of corporate stock standing in the name of some-one other than the defendant. Mr. Justice Dean said the stock did not stand in the name of the defendant but in the name of the decedent as the original owner.

"Therefore it stood in the name of another than defendant and to constitute a lawful seizure the attachment should have been preceded by an affidavit and recognizance."

It was held, however, that the defendant had waived the irregularity by not moving to quash or to set aside the writ of attachment, and the attachment was therefore upheld and the judgment against the garnishee was affirmed.

Mr. Justice Dean was rather liberal in reading into the Act of 1843 the three sections of the 1836 statute which seem unconnected therewith, to wit, the thirty-second, thirty-third and thirty-fourth. As we have said, if these and the thirty-sixth and thirty-eighth sections are cut from the tail of the kite there is no basis for a contention that under the act authorizing the attachment of an interest in a decedent's estate corporate stock can be seized only by a writ naming and served upon the issuing corporation as garnishee.

The Superior Court decision in Willoughby v. Barrett, supra, invalidating foreign attachment of stock by a writ directed against the issuing corporation, was handed down more than 10 years after the consonant decision in First National Bank of Woodstown v. Trainer, supra.

The case of Moys v. Union Trust Co., 276 Pa. 58, above cited, involved a writ of foreign attachment against a nonresident, in which Union Trust Company was summoned as garnishee. The garnishee admitted having in its hands a sum of money and also shares of the capital stock of a foreign corporation, held as trustee under an agreement partly for the benefit of the nonresident debtor.

The Supreme Court, through Mr. Justice Frazer, said (p. 60) :

"At common law, corporate shares of stock were not subject to levy and sale under execution, for the reason the property they represented was considered of such shadowy nature there was nothing capable of being physically seized: 6 C. J. 212, and cases cited. For the same reason, shares of a foreign corpora-tion are not liable to attachment, in absence of express statutory provision, in the hands of the person residing within the jurisdiction: Christmas v. Biddle, 13 Pa. 223; Smith v. Downey, 8 Ind. App. 179; Tweedy v. Bogart, 56 Conn. 419; U. S. Express Co. v. Hurlock, 120 Md. 107. Although there are cases to the contrary, several of which are cited by appellee, an examination of these decisions discloses they are based mainly on statutory provisions and regula-tions: Bowman v. Breyfogle, 145 Ky. 443; Plimpton v. Bigelow, 93 N. Y. 592; Young v. Tredegar Iron Co., 85 Tenn. 189; Old Second Nat. Bank v. Williams, 112 Mich. 564. The theory applicable is that a stockholder is not a creditor of the corporation and its shares do not represent either money or evidence of a debt. As a result of this situation, statutes have been passed in most jurisdic-tions fixing the terms and conditions upon which corporate stock can be reached. See Act June 16, 1836, P. L. 755, section 22; First Nat. Bank v. Trainer, 209 Pa. 387; 28 C. J. 167, section 213. A statutory provision for attaching cor-

porate shares, however, will not be extended by construction to stock of a foreign corporation: Christmas v. Biddle, supra; Morton v. Grafflin, 68 Md. 545; Plimpton v. Bigelow, supra.

". . . It thus appears from the agreement that the right of the parties was not merely a return of the stock made the subject of the pooling arrangement, but to receive a proportion of the proceeds of the sale of the stock, less proper charges, and also dividends, if any, accruing during the existence of the trust. The facts of this case, consequently, distinguish it from Christmas v. Biddle, supra. In that case the stock was transferred to an agent in Pennsylvania only for the purpose of sale. The title remained in the owner residing in the foreign jurisdiction and did not pass to the agent, therefore neither the corporation nor the holder of the title to the stock was at any time within this State. Here the legal title to the stock became vested in the trustee with duties to account for the proceeds of any sale and for the accrued dividends, less expenses. The right of the creditor was not an absolute right to the stock but to an accounting for his share of the profits, if any, after the money advanced by the various parties had been repaid."

The attachment was upheld as a seizure of defendant Ross' rights under the trust agreement of the stock.

In Cherkasky, to use, v. Pride et al., 10 D. & C. 133, Judge Finletter held that the stock of a foreign corporation is not subject to attachment execution in Pennsylvania, saying there was nothing in the Acts of March 29, 1819, P. L. 226, 7 Sm. L. 217, and June 16, 1836, P. L. 755, relating to attachment execution to authorize the attachment of such stock. In such case it is immaterial that the stock certificate is in Pennsylvania, that the foreign corporation is registered and has an office in the State, and that all of its officers and plaintiff and defendant in the execution reside in Pennsylvania. "The reason for the freedom of shares of a foreign corporation from liability to attachment is that the *situs* of stock is at the domicile of the corporation. The mere presence of the certificate [in Pennsylvania] is not sufficient to bring into the foreign state the property, of which the certificate evidences the ownership." Judge Finletter also held that section 14 of the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, does not apply where the corporation whose stock it is sought to attach is domiciled in a State in which this uniform law has not been enacted.

Under this case, a stock certificate is not recognized as property but only as evidence of the holder's ownership of property having its situs at the domicile of the corporation.

This appears contrary to ordinary business practice and to the intention of those participating in the purchase and sale of corporate stocks. In modern business usage, a certificate of stock is property, just as a bearer or coupon corporate bond is recognized and transferred as property, and not as mere evidence of debt. Banks lend billions of dollars upon pledge only of the certificates of stock and without requiring or giving notice to the issuing corporation. As with bills of lading and warehouse receipts, assignment of the certificate passes title to what it represents. With respect to bonds secured by mortgage of real estate, there are decisions holding that the attachment must be against the debtor. Judge Finletter of Court of Common Pleas No. 4 of Philadelphia County, in the case of Fred Shmidheiser B. & L. Assn. v. Paradise et al., 17 D. & C. 779, held that a judgment creditor may issue an attachment execution against one indebted to defendant on a bond secured by a mortgage and may maintain a bill in equity against the defendant, the garnishee, and the recorder of deeds to compel delivery of the bond and mortgage to the sheriff and to restrain payment to defendant of either the principal or interest on the obliga-

tion, or to restrain the recording of any assignment of the mortgage. Judge Finletter held that the attachment was of a debt due defendant on a bond, and that a seizure of the debt carried with it as by assignment the benefit of the mortgage which was security for the debt; that the mortgage, apart from the debt, is so intangible that it alone could not be levied upon, but the debt evidenced by the bond was properly seized under section 35 of the Act of June 16, 1836, P. L. 755, and the security passed along with the debt.

There are other decisions to the effect that attachment execution for the seizure of corporation bearer bonds, promissory notes, and other obligations to pay money must all be directed against the debtor and not against the one having possession of the bonds, notes, etc.

That this circumlocution may be avoided where such securities are attached as part of an interest in a decedent's estate is indicated by decisions of the Supreme Court, beginning as far back as 1852. The earliest was Gochenaur's Executors v. Hostetter, 18 Pa. 414, decided in 1852, in which the opinion of the Supreme Court was written by Mr. Justice Woodward who, after reviewing the Pennsylvania legislation relating to attachment execution, foreign attachment, and attachment of legacies and other interests in decedents' estates, said (pp. 418, 419, 420) :

"In so far as a legacy, a distributive share, and a chose in action, can be considered *things*, as distinguished from the dollars which they represent and signify, execution attachment is a proceeding *in rem*, for it goes directly against such substantives as these.

". . . But notwithstanding the Act of 1843 this Court still held in . . . McCreary v. Topper, 10 *Barr* 419, that legacies and interests in decedents' estates could not be attached in execution until ascertained by a settlement of the administration account. The last of these cases was decided in 1849, and the same year the Act of 10th April, 1849, was passed, which provides that, 'the 10th section of the Act of 13th April, 1843, shall be deemed to authorize the issuing and service of process in the nature of attachment, at any time after the interest which any person or persons may have in the real or personal estate of any decedent, shall have accrued by reason of the death of such decedent.' Then follows a proviso, that the sale of the interest attached shall not be had for a year, unless the administration account be sooner settled.

"Thus there seems to have been a persevering conflict between the legislature and the Courts as to a creditor's right to attach his debtor's interest in a decedents' estate. It is time such a contest should cease, and the Acts of Assembly be permitted to have free course. When it is considered that the remedy against choses in action sprung from the legislative will; that the Act of 1836 was a remedial statute and entitled to a liberal construction, and that the legislature have manifested a clear intent to bring the specific interest of a legatee or heir of a decedent within the process devised by the Act of 1836, it seems to be our duty to aid and advance the legislative intention, rather than, by adopting refinements of casuistry, to hinder and thwart it. These several Acts of Assembly are in *pari materia*, and taken together they give the creditor the right to succeed to the defendant's interest in a legacy or distributive share arising out of a decedent's estate, by process, of attachment execution, without regard to the relations of the garnishee. Great emphasis is laid on the words in the 10th section of the Act of 1843, 'shall be subject to be attached or levied upon in satisfaction of any judgment, in the same manner as debts due are made subject to execution by the 22d section of the Act 16th June, 1836.' But these words are descriptive of the mode of proceeding merely, and not a *limitation* of the credi-

tor's right to attach legacies and distributive shares. The 22d section of the Act of 1836 mentions *stock, deposits of money,* and *debts due* and belonging to the defendant, as objects of attachment in the mode pointed out by the Act. The Act of 1843 makes legacies and distributive shares, in whatever hands they may be found, objects of attachment in the same general mode. Now, to take words that are descriptive of the *manner of proceeding,* and apply them to defeat the *objects* of a remedial statute, is a mode of construction for which I trust this Court will never make itself responsible."

We might well rest our decision solely on this opinion of Mr. Justice Woodward. There are other pertinent decisions, however.

In 1860, the Supreme Court, through Mr. Chief Justice Lowrie, held in Strong's Executor v. Bass et al., 35 Pa. 333:

"The attachment of this legacy does not alter the *quantity* of the rights and duties of the parties in relation to it; but only transfers to the plaintiffs the responsibility which before was due to the legatee. No essential element of the relation between the executor and the legatee is affected by the proceeding; it merely substitutes the legatee's creditor instead of the legatee himself. . . . It is the right and the relations, as they exist at the time of the attachment, that are transferred, and these cannot be changed by the original parties, after the attachment."

In 1883, in Maurer v. Kerper, 102 Pa. 444, in an opinion written by Mr. Justice Trunkey, the Supreme Court discussed an attachment execution that had issued against Henry Kerper, garnishee, in his own right and as executor of another. The garnishee for himself and as executor pleaded nulla bona. A trial was had, from which it appeared that the judgment debtor had a vested interest in the decedent's estate, and, the case being tried without a jury, the court entered a money judgment against the garnishee in the sum of $849.60, with costs. The Supreme Court said that it was to be inferred from the opinion of the court below that the intention was to render judgment against the garnishee collectible only out of the interest of the defendant in the estate of the decedent, and an error had been made in entering an unrestricted money judgment against the garnishee; that the judgment should have been rendered for plaintiff against the garnishee as executor for the amount of plaintiff's judgment with interest, to be levied out of the interest of Daniel B. Kerper in the personal estate of said decedent.

The Supreme Court also said: "An execution attachment will lie against a legacy or distributive share before settlement of the decedent's estate, and the court may mould the judgment against the executor or administrator into such form as will do no injustice to any one."

In 1884, Mr. Justice Trunkey again spoke for the Supreme Court in Fenton, Trustee, v. Fisher, 106 Pa. 418, saying:

" 'Any interest which any person or persons may have in the real or personal estate of any decedent, whether by will or otherwise, or so much thereof as may be necessary to satisfy the demand and costs of claimant, shall be subject and liable to be attached by any creditor or creditors of such person or persons, by writ or writs of foreign attachment in the hands or possession of the executor or administrator, or in whose hands or possession soever the same may be, as fully and effectually as in other cases:' Act, July 27, 1842, P. L., 436. The Act of April 13, 1843, P. L., 235, provides that all such interests shall be 'subject to be attached and levied upon in satisfaction of any judgment, in the same manner as debts due are made subject to execution.' These remedial statutes are too plain for need of interpretation, and since the decision in Gochenaur's Executor *v.* Hostetter, 18 Pa. St., 414, the courts have not undertaken by con-

struction to thwart the intendment of the legislature as to a creditor's right to attach his debtor's interest in a decedent's estate.

". . . The interest of the debtor was subject to attachment at any time after the death of the decedent, whether converted or unconverted, and after conversion, while the money was in the hands of the trustee, he was a person within the meaning of the statute as clearly as if the interest were in the hands of an executor or administrator."

In Bouslough v. Bouslough, 68 Pa. 495, an attachment execution issued directed against an executor as garnishee. The executor answered, averring that the defendant had sold all his interest in the decedent's estate prior to the date of judgment, and that the estate had not been settled. There was a trial resulting in a verdict by the jury for plaintiff against the executor, upon which verdict the court entered judgment for a definite sum with interest. On appeal, Mr. Justice Agnew held (p. 498) :

"The legacy share or interest in the estate being now subject to attachment as soon as it accrues, and before it has been ascertained by any decree in the Orphans' Court, it is impossible for the jury to comply with the provision in the 58th section of the Act of 13th June 1836, by finding what goods or effects were in the hands of the garnishees at the time of the execution of the attachment and the value thereof. . . . The attachment transfers to the attaching creditor only the right of the debtor in the estate, subject to all claims of the garnishee as the representative of the estate in his hands. . . . Thus it is evident that a jury in order to find the sum due or coming to the debtor from the garnishee as executor or administrator, would be compelled to settle the administration account itself, a thing improper, inconvenient and belonging to the Orphans' Court alone. The requisition of the 58th section of the Act of 13th June 1836 is therefore inapplicable to attachments under the Acts of 1842 and 1843 upon legacies, distributive shares and other interests in the unsettled estates of decedents."

The money judgment entered against the executor as garnishee was affirmed.

Where the trial takes place prior to a settlement of the estate, it seems to the writer that, analogous to the procedure in other cases, a very simple method of submitting to a common-law jury such an issue as we have herein is to permit them to return a verdict that the garnishee has in his possession as the property of the judgment debtor subject to plaintiff's attachment "an undivided interest or share in the estate of decedent", omitting a finding as to value.

The courts undoubtedly have the power to compel an executor, administrator, or trustee against whom judgment has been entered as garnishee to execute all necessary assignments or endorsements of corporate stock, mortgage indentures, etc., in order that the purchaser thereof at a sheriff's sale may acquire full title to all property forming part of the legacy, devise, or other share attached.

As hereinbefore stated, we regard the attachment in the case before us as a seizure of an undivided interest in an estate and not an attachment of separate items of corporate stock, bonds, and the like. What could be more conclusive in support of our view that the attachment is fully effective without service, upon the stock-issuing corporations and the obligors on bonds than the circumstance that when the attachment took effect the judgment debtor had no right in or to any particular stock or bond and therefore no one could determine what corporations or obligors should be served?

Having seized the undivided share in the estate, plaintiff had a right after 1 year from the date of decedent's death (or sooner if an account has been filed by the administrator c. t. a.) to proceed with execution for the purpose of hav-

ing this undivided interest exposed to public sale and the proceeds of such sale applied to the satisfaction of the judgment. Plaintiff was not obliged to delay realizing upon his judgment until such time as the estate was divided or distribution was ordered of the divided parts. The case must be decided as of the date when the attachment became binding, not as of the time of division and distribution, and hence we find the garnishee has in its hands as the property of defendant and subject to plaintiff's attachment, all the moneys, securities, and property set forth in the answers as forming defendant's share of the estate of Charles Buckman, deceased.

The prothonotary will accordingly enter judgment against the garnishee, and if no appeal be taken the plaintiff may have execution by the issuance of the appropriate writ.

An attorney's fee of $50 is allowed the garnishee, which with costs should be deducted from the cash in the garnishee's hands admitted to be subject to the attachment.